IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| RICHARD WINFREY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAN JACINTO COUNTY, San Jacinto County | ) | |
| Sheriff JAMES WALTERS, Former San | ) | |
| Jacinto County Sheriff LACY ROGERS, | ) | |
| Former San Jacinto County Sheriff's | ) | |
| Department Deputy LENARD JOHNSON, | ) | Case No. 10-cv-1896 |
| Texas Ranger GROVER HUFF, Texas Ranger | ) | |
| RONALD DUFF, FORT BEND COUNTY, Fort | ) | |
| Bend County Sheriff MILTON WRIGHT, | ) | |
| Former Fort Bend County Sheriff's | ) | |
| Department Deputy KEITH PIKETT, and | ) | |
| as-of-yet unknown employees of San | ) | |
| Jacinto County, as-of-yet unknown | ) | |
| Texas Rangers, and as-of-yet unknown | ) | |
| employees of Fort Bend County, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, RICHARD WINFREY, JR., by his attorney, LOEVY &

LOEVY, complains of Defendants, SAN JACINTO COUNTY, JAMES

WALTERS, LACY ROGERS, LENARD JOHNSON, GROVER HUFF, RONALD DUFF,

FORT BEND COUNTY, MILTON WRIGHT, KEITH PIKETT AND other as-of-

yet UNKNOWN EMPLOYEES (collectively "Defendants"), and states as

follows:

## Introduction

1.   Plaintiff, Richard Winfrey, Jr. was wrongfully charged with capital murder on the basis of knowingly contrived dog scent lineups.

2.   These dog scent lineups, which were developed by Defendant Pikett, epitomize the worst of "junk science" – and the Defendants knew it.  Defendant Pikett developed the dog scent lineups without any training, without any mechanism for testing their scientific reliability or even for ensuring that the "scents" were not contaminated.  In fact, the "dog scent lineups" conducted by Pikett were so preposterous that one expert who has viewed them asserted that "[i]f it was not for the fact that this is a serious matter, I could have been watching a comedy."

3.   Well before Plaintiff was arrested, the Defendants knew that dog scent lineups and their mastermind, Defendant Pikett, were a fraud.  Nonetheless, the Defendants continued to use them in their criminal investigations, including to inculpate Plaintiff in a murder that he did not commit.

4.   In an attempt to ensure that Plaintiff was convicted despite his innocence, the Defendants fabricated evidence – including coached false testimony that incriminated the Plaintiff – to corroborate the sham findings of the dog scent lineups.

5.    Ultimately, the criminal case against Plaintiff fell apart, just as the dog scent lineups have been exposed a fraud. On June 12, 2009, after spending more than two years wrongfully imprisoned on capital charges and branded a "murderer," Mr. Winfrey was acquitted of all charges and released from custody.

## Jurisdiction and Venue

6.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

7.    This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

8.    Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## The Parties

9.    Plaintiff Richard Winfrey, Jr. is a 23 year-old resident of San Jacinto County.  By all accounts, a mild-mannered and well-liked young man, Mr. Winfrey was working at Bubba's Store and Restaurant before he was arrested.  Since his release, he has been working as an interviewer for a research firm.

10.  At all relevant times, Defendants Lenard Johnson and the as-of-yet unknown employees of San Jacinto County were

3

officers employed by the San Jacinto County Sheriff and the San Jacinto County Sheriff's Department.  At all relevant times, Defendant Lacy Rogers was the San Jacinto County Sheriff. Defendants Johnson, Rogers and the as-of-yet unknown employees of San Jacinto County were acting within the scope of their employment at all relevant times.

11.  Defendants Grover Huff, Ron Duff, and the as-of-yet unidentified Texas Rangers were at all relevant times Texas Rangers employed by the Texas Department of Public Safety, and acting within the scope of their employment.

12.  Defendant Milton Wright is and was at all relevant times the Sheriff of Fort Bend County.  At all relevant times, Defendant Keith Pikett was a Deputy with the Fort Bend County Sheriff's Department.  At all relevant times, Defendant Keith Pikett and the as-of-yet unidentified employees of the Fort Bend County Sheriff's Office were employed by the Fort Bend County Sheriff's Department.  Likewise, at all relevant times, Defendants Wright, Pikett and the as-of-yet unidentified employees were acting within the scope of their employment.

## Factual Background

### Defendant Pikett's Fraudulent Dog Scent Lineups

13.  In the early 1990s, Defendant Pikett developed a fraudulent investigative technique he coined "dog scent lineups."

4

14.   In this technique, the dog is introduced to a scent sample that has been collected from a crime scene or piece of evidence.  After "getting" that scent, the dog is then presented with a series of containers with scents in them.  These scents have been taken directly from a suspect and, allegedly, from others purportedly matching the general description of the suspect.  According to Defendant Pikett, the dog will then communicate to its handler/observer if the scent that it "got" the first time matches a scent in one of the containers.

15.   Without a doubt, these lineups epitomize the worst of junk science.  Defendant Pikett developed the dog scent lineups without any training – he simply purchased bloodhound dogs and "trained" them to indicate when two human scents matched. Defendant Pikett never tested the dog scent lineups' accuracy, nor did he establish a set of standards under which to conduct the lineups.  Instead, Defendant Pikett has repeatedly lied under oath about his qualifications, his training, and the supposed infallibility of his dog identifications.

16.   Despite the unreliability of the dog scent lineup results, Defendant Pikett has used them in thousands of criminal case investigations.

17.   The fraudulent nature of Defendant Pikett's dog scent lineups was exposed well before Plaintiff was charged with and prosecuted for capital murder.  For example, in 2006, Defendant

Pikett's dog scent lineup wrongly implicated an innocent man in a murder case in which the true perpetrator later confessed. Similarly, in 2007, the dog scent lineup falsely implicated a man in a string of robberies for which he was absolutely innocent.  Finally, in 2007 and 2008, Pikett's dogs falsely identified two men who were then charged with capital murder on the basis of dog scent lineups; both were exonerated when the real killer confessed.

18.  Indeed, before Plaintiff's wrongful arrest, the "dog scent lineups" were so patently false that a senior prosecutor in the Harris County District Attorney's Office alerted the Houston Police Department to the fact that Defendant Pikett and his dogs were a fraud.

19.  Given the exposure of Defendant Pikett's dog scent lineups as a fraud within the law enforcement community, the Defendants were aware that Defendant Pikett and his dog scent lineups were a sham.  Nonetheless, the Defendants continued to use Defendant Pikett to help them "solve" crimes and close cases.

**The Murder**

20.  Murray Burr was a custodian at the high school that Richard Winfrey, Jr. attended.

6

21.   On or about August 7, 2004, the body of Mr. Burr was discovered inside his home.  Mr. Burr had been beaten and stabbed to death.

### Defendants Fabricate Evidence to Inculpate Plaintiff

22.   In the days following Mr. Burr's murder, the Defendants canvassed the neighborhood looking for potential witnesses.  During this canvas, the Defendants learned that Plaintiff and his sister, Megan Winfrey, would visit Mr. Burr on occasion on their way to church on Sundays.

23.   At the time of Mr. Burr's murder, Richard Winfrey, Jr. was only 17 years old; his sister Megan was only 16 years old.

24.   The Defendants spoke with Mr. Winfrey about the murder.  Mr. Winfrey explained that he had absolutely nothing to do with – and, furthermore, no knowledge of – the murder of Murray Burr.

25.   Instead of initiating a search for the perpetrator of this heinous crime, the Defendants simply determined that Plaintiff and his family were the offenders.  The Defendants actively ignored all evidence to the contrary, including DNA tests performed on evidence collected at the crime scene that excluded Mr. Winfrey as an offender.

26.   Approximately one week after they approached Mr. Winfrey, and having found no legitimate evidence that would inculpate him, the Defendants turned to Defendant Pikett and his

7

dogs.  The Defendants knew that Defendant Pikett's practice of conducting dog scent lineups to identify criminals was a fraud. Despite this knowledge, the Defendants subjected Mr. Winfrey to a dog scent lineup.

27.  Mr. Winfrey was innocent, and felt no hesitation about providing the Defendants with everything they were asking of him.  To conduct the dog scent lineup, the Defendants took a "scent sample" from the victim's clothing and compared this to six other scent samples, including one from Mr. Winfrey, who had readily complied with their request that he wipe his hands with a piece of gauze.

28.  The dog scent lineup purportedly "confirmed" that Mr. Winfrey was involved in the murder.

29.  To provide additional "confirmation" of the dog scent lineup's result, Defendant Pikett conducted what he described as a dog "scent drop."  That is, two dogs were allegedly provided with Mr. Winfrey's scent outside the victim's home.  After several stops and re-starts, the two dogs – accompanied by Pikett – arrived at Plaintiff's home.

30.  Unfortunately for the Defendants, it was later discovered that the "scent drop" was conducted using the scent of another man – not Plaintiff – who was not related to Plaintiff and did not live in Plaintiff's home.  There is no question that this "scent drop" was a sham on its face.

31.   Once the Defendants learned that the "scent drop" had been performed using another individual's scent, the Defendants called the "scent drop" an "accident."

32.   Despite this discovery, the Defendants continued to use this evidence in furtherance of the prosecution of the case.

33.   To corroborate Defendant Pikett's fabricated scent identifications of Mr. Winfrey, the Defendants coached a jailhouse snitch into identifying Plaintiff, his sister and his father as the perpetrators of the murder of Mr. Burr.  The Defendants never disclosed their improper coaching of the jailhouse snitch to Mr. Winfrey.  That jailhouse snitch has fully recanted his false statements.

**The Defendants Ignore Obvious Alternative Offenders**

34.   In addition to fabricating evidence to inculpate Plaintiff, the Defendants also ignored substantial evidence pointing at other possible offenders.

35.   For example, the Defendants ignored all evidence pointing at Tracy Brown as an alternative offender.

36.   Ms. Brown was Mr. Burr's niece.  Ms. Brown handled Mr. Burr's financial affairs.

37.   Just prior to Mr. Burr's murder, Ms. Brown and her husband were having severe financial problems.  Indeed, before Mr. Burr was killed, Ms. Brown had been fired from at least one job as a bank teller because of money coming up short.

38.   Since she handled her uncle's affairs, Ms. Brown knew that she would inherit a large sum of money upon Mr. Burr's death.

39.   After Mr. Burr's death, Ms. Brown collected this money – an amount totaling approximately $500,000.  Ms. Brown also collected proceeds from the sale of Mr. Burr's home.  She and her husband went on a two-week cruise just a couple of weeks after her uncle was murdered.

40.   Although the Defendants were aware of the Browns' motive for killing Mr. Burr and their suspicious behavior in the aftermath of his death, the Defendants never investigated Ms. Brown as a possible perpetrator of the murder of Murray Burr.

### Plaintiff is Wrongfully Arrested and Prosecuted for Mr. Burr's Murder

41.   Despite the fact that Plaintiff had done absolutely nothing wrong, and the fact that the Defendants had absolutely no legitimate evidence against him, on or about February 8, 2007, more than two-and-a-half years after Mr. Burr's death, Plaintiff was arrested for the murder of Murray Burr.

42.   At only 20 years old, Plaintiff had never received so much as a speeding ticket, let alone been arrested for a crime. Nonetheless, for the next nearly two-and-a-half years, Plaintiff was confined inside a jail cell, branded a murderer, and charged with a capital crime.

### Plaintiff is Acquitted in 13 Minutes

43.  On June 12, 2009, after a 5-day trial, Plaintiff was acquitted of the murder of Murray Burr.  The jury reached its determination in only 13 minutes.

44.  Although Plaintiff has regained his freedom, it has come at a tremendous cost.  Mr. Winfrey spent nearly two-and-a-half years incarcerated for a capital crime that he did not commit.  During his wrongful incarceration, Mr. Winfrey was deprived of the various pleasures of basic human experience, which all free people enjoy as a matter of right.  As a result of his wrongful incarceration, Mr. Winfrey has suffered tremendous damage, including extreme emotional distress, physical suffering and financial loss.

### Count I – 42 U.S.C. § 1983
### Violation of Due Process

45.  Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

46.  As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights.

47.  In the manner described more fully above, the Defendants conducted a reckless criminal investigation, knowingly using fabricated junk science, which they bolstered

11

with false reports and coerced evidence, to mislead and misdirect Plaintiff's criminal prosecution.  Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.  Moreover, the Defendants failed to release Plaintiff even after they knew, or should have known, that Plaintiff had been misidentified.

48.  The Defendants' misconduct directly resulted in the unjust criminal prosecution of Plaintiff, in violation of his rights under the United States Constitution.

49.  As a result of the Defendants' violation of his constitutional rights, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

50.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

51.  The misconduct described in this Count was undertaken by employees and agents of the San Jacinto County Sheriff's Department, including but not limited to the Defendants, pursuant to the policy and practices of the San Jacinto County Sheriff to pursue wrongful arrests and convictions through profoundly flawed investigations and fabricated evidence, including junk science evidence.  In this way, the San Jacinto County Sheriff's Office violated Plaintiff's rights by

maintaining policies and practices that were the moving force
driving the foregoing constitutional violations.

52.  These widespread practices, so well-settled as to
constitute *de facto* policy in the San Jacinto County Sheriff's
Office, were able to exist and thrive because municipal
policymakers with authority over the same exhibited deliberate
indifference to the problem, thereby effectively ratifying it.

53.  The widespread practices described in the preceding
paragraphs were allowed to flourish because the San Jacinto
County Sheriff declined to implement sufficient training and/or
any legitimate mechanism for oversight or punishment.

54.  The misconduct described in this Count was also
undertaken by employees and agents of the Fort Bend County
Sheriff's Office, including but not limited to the Defendants,
pursuant to the policy and practice of the Fort Bend County
Sheriff to pursue wrongful arrests and convictions through
profoundly flawed investigations and fabricated evidence,
including junk science evidence.  In this way, the Fort Bend
County Sheriff's Office violated Plaintiff's rights by
maintaining policies and practices that were the moving force
driving the foregoing constitutional violations.

55.  These widespread practices, so well-settled as to
constitute *de facto* policy in the Fort Bend County Sheriff's
Office, were able to exist and thrive because municipal

policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

56.  The widespread practices described in the preceding paragraphs were allowed to flourish because the Fort Bend County Sheriff declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

57.  As a result of the Defendants' unconstitutional conduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

**Count II — 42 U.S.C. § 1983**
**Supervisory Liability**

58.  Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

59.  The constitutional injuries complained-of herein were proximately caused by a pattern and practice of misconduct which occurred with the knowledge and consent of those of the Defendants who acted in a supervisory capacity, such that these officers personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or else affirmatively turned a blind eye thereto without taking any steps to stop it.

60.  In this way, these Defendants are personally responsible for the complained-of injuries because they knowingly, willfully, or at least recklessly caused the alleged

14

deprivation by their actions or by their deliberately indifferent failure to act.

61.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

62.   The misconduct described in this Count was undertaken pursuant to the San Jacinto County's and the Fort Bend County's policies and practices in the manner more fully described above.

63.   As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

### Count III – 42 U.S.C. § 1983
### Failure to Intervene

64.   Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

65.   One or more of the Defendants had a reasonable opportunity, had they been so inclined, to prevent another Defendant from violating Plaintiff's rights in the manner described above, but they failed to do so.

66.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

67.   The misconduct described in this Count was undertaken pursuant to the San Jacinto County's and the Fort Bend County's policies and practices in the manner more fully described above.

68.   As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

### Count IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

69.   Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

70.   After the crime at issue, the Defendants reached an agreement amongst themselves to frame Plaintiff for the murder, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

71.   In this manner, the Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

72.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

73.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

74.   The misconduct described in this Count was undertaken pursuant to the San Jacinto County's and the Fort Bend County's policies and practices in the manner more fully described above.

75.   As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

### Count V – State Law Claim
### Malicious Prosecution

76.   Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

77.   Defendants Rogers, Lenard, Huff, Duff, Wright and Pikett (hereinafter the "Individual Defendants") caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  Judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

78.   The Individual Defendants accused Plaintiff of criminal activities knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

79.   Statements the Individual Defendants made regarding Plaintiff's alleged culpability were made with the knowledge

that said statements were false and perjured.  The Individual Defendants also fabricated evidence by coercing false inculpatory testimony from purported witnesses, and through dog scent lineups.  The Individual Defendants withheld the facts of their manipulation and the resulting fabrications from Plaintiff.

80.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

81.  As a result of this misconduct, Plaintiff sustained and continues to sustain injuries including emotional pain and suffering.

82.  This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any municipality or any of the Sheriffs in their official capacities.

### Count VI – State Law Claim
### Abuse of Process

83.  Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

84.  The Individual Defendants made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process.

85.   The Individual Defendants had an ulterior motive or purpose in exercising such illegal, improper, or perverted use of the process.

86.   As a result of the Individual Defendants' misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

87.   This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any municipality or any of the Sheriffs in their official capacities.

### Count VII — State Law Claim
### Intentional Infliction of Emotional Distress

88.   Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

89.   In the manner described more fully above, by wrongfully arresting and prosecuting Plaintiff for a capital murder that he did not commit, the Individual Defendants intended to cause emotional distress.

90.   In doing so, the Individual Defendants' conduct was extreme and outrageous and caused Plaintiff severe, disabling emotional distress.

91.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

92.  As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

93.  This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any municipality or any of the Sheriffs in their official capacities.

## Count VIII – State Law Claim
## Civil Conspiracy

94.  Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

95.  In the manner described more fully above, after the crimes at issue, the Individual Defendants reached an agreement among themselves and a meeting of the minds to frame Plaintiff for the murder.

96.  In furtherance of that conspiracy, the Defendants undertook one or more unlawful, overt acts as described above.

97.  As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

98.  This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any municipality or any of the Sheriffs in their official capacities.

WHEREFORE, Plaintiff, RICHARD WINFREY, JR., respectfully requests that this Court enter judgment in his favor and against Defendants SAN JACINTO COUNTY, JAMES WALTERS, LACY ROGERS, LENARD JOHNSON, GROVER HUFF, RONALD DUFF, FORT BEND COUNTY, MILTON WRIGHT, KEITH PIKETT AND other as-of-yet UNKNOWN EMPLOYEES, awarding compensatory damages, costs, and attorneys' fees as well as punitive damages against each of the Individual Defendants and any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, RICHARD WINFREY, JR., hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


/s/Gayle Horn

Attorneys for Plaintiff



Arthur Loevy
Jon Loevy
Gayle Horn
Rachel Steinback
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900