| United States District Court | Southern District of Texas |
|---|---|

| | |
|---|---|
| Richard Winfrey, Jr., § § Plaintiff, § § versus § § San Jacinto County, et al., § § Defendants. § | Civil Action H-10-1896 |

## Opinion on Summary Judgment

1.  *Introduction.*

Richard Winfrey spent two years in jail for a crime before the jury acquitted him. His incarceration was unfortunate – for lack of a better word. It was not the result of constitutional misconduct.

Criminal justice is a process. Beginning with investigators, it ends with juries. The system is, being human, inherently fallible. Errors are made at different stages; safeguards abound to reduce them. Investigators must follow constitutions and statutes. Grand juries check near the start to ensure sufficient evidence exists to support a case's going to trial. Rules of evidence exclude unreliable testimony. The system encourages multiple perspectives and reduces partiality by having both sides with separate advocates and a jury with twelve people. After the trial judge and jury have finished, the opportunity to appeal remains.

Acquittals show that the system works. They neither show a failure nor evince an abuse of authority. In Winfrey's case, to corroborate the circumstantial evidence, the investigators used a technique that was reasonably reliable as a part of their preparation. Like all other forms of investigation, using dogs to pick a suspect's scent from several others may have been done so that the results are undependable. At any rate, the jury must have given little weight to the technique when it acquitted Winfrey.

Winfrey is suing nine parties for violating his constitutional rights. He will recover from none.

2. *Background.*

Murray Wayne Burr was found murdered in his home on August 7, 2004, in Texas's San Jacinto County. Sheriff Lacy Rogers and deputy Lenard Johnson first investigated. Later, they were joined by two Texas Rangers – Ronald Duff and Grover Huff. Investigators from the laboratory of the Department of Public Safety also collected evidence.

Neighbors told the officers that Winfrey and his sister, Megan Winfrey, had visited Burr's home a few weeks before the murder. The investigation narrowed to Winfrey, his father, his sister, and her boyfriend. On August 16, Huff collected DNA from Winfrey and sent it to the state's crime laboratory in Houston. It did not match crime-scene evidence.

Huff then sought help from Keith Pikett, a dog handler with the Fort Bend County Sheriff to help. On August 24, Pikett conducted a dog-scent lineup with scent pads from Winfrey and five other men. The lineup tested whether the Winfrey's scent matched the clothes that Burr had been wearing when he was murdered. Based on the dog's behavior, Pikett concluded that Winfrey's scent was on Burr's clothes. A scent lineup, says Pikett, does not prove direct contact. It shows a scent relationship, and it could have been caused by a scent-transfer by a third party.

Also, Pikett's dogs trailed a scent. Pikett says he was told that his dogs had been given Winfrey's scent. He did not know the location of the Winfrey home. Pikett is from a county about 30 miles to the southwest of Houston, and Winfrey was from a county about 60 miles to the northwest – diagonally across Houston. His dogs followed the scent at least two miles to Winfrey's driveway. Later, Huff told Pikett that the dogs had mistakenly been given the scent of Chris Hammond, the boyfriend of Megan Winfrey, another suspect.

Two years later, David Wayne Campbell, a cellmate of Winfrey's father, Richard Winfrey, Sr., spoke to Sheriff Rogers about Burr's murder. According to Campbell, Winfrey Sr. told him that he had heard that someone inside Burr's house had unlocked the backdoor to let in others. Campbell said Winfrey Sr. also mentioned that guns had been taken from Burr's house and that Burr had been castrated. Campbell did not say that the father had admitted that he had been involved in the murder.

The police had not known about the guns before having interviewed Campbell. Sheriff Rogers contacted Burr's brother-in-law, Jessie Oates, to verify that information. Oates said Burr had shown him guns a few months before the murder; he did not know if they were in

Burr's house when he died. The coroner's report does not mention castration. After the interview, Winfrey Sr., Megan Winfrey, and Winfrey were arrested for capital murder.

In 2007, Winfrey Sr. was convicted of murder, and the following year, Megan Winfrey was convicted. The Texas Court of Criminal Appeals has recently reversed the conviction of Winfrey Sr. In April of 2011, the Court of Appeals for the Ninth District of Texas affirmed Megan's conviction. Winfrey was tried last. He remained in jail until he was acquitted on June 12, 2009. The jury reached its verdict in thirteen minutes.

One year after his trial, Winfrey sued every institution and officer who was related in any degree to his case because a dog-scent lineup had been used. He sued two counties, three sheriffs, two Texas Rangers, and two sheriff's deputies:

- San Jacinto County
- Fort Bend County
- James Walters
- Lacy Rogers
- Milton Wright
- Grover Huff
- Ronald Duff
- Lenard Johnson
- Keith Pikett

Because James Walters became sheriff of San Jacinto County after the events in this case, he has been dismissed.

3.  *Keith Pikett and the Dogs.*

Winfrey says Pikett violated his constitutional rights by fabricating the evidence in the scent lineup. Pikett says that he did not lie and is immune.

When the government convicts someone with testimony that its agents know is false, it violates the Constitution.[1] An officer cannot shield himself through his immunity for ordinary errors in his governmental work when he procures a conviction by an identification by perjury.[2] A scientifically inaccurate report can be equivalent to other deliberately false

---

[1] *Naupe v. Illinois*, 360 U.S. 264, 272 (1959); *United States v. Wilson*, 289 F.Supp. 2d. 801 (S.D. Tex. 2003).

[2] *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988).

evidence created by investigators.[1] The information must have been known to the officer at the time to have been materially erroneous to the extent that it was a deception – a conscious pretense to facts not known.

A sloppy investigation is not fabrication, unless the work is routinely done without a reasonable basis for a good faith belief in its integrity and is still presented as legitimate; that may qualify as fabricated evidence.

Dogs help humans in a variety of difficult jobs. Dogs reliably guide the blind, flush game, comfort the ill, locate the lost, subdue the violent, interdict contraband, intimidate the intruder, herd livestock, and track the fugitive. Using a dog to alert among scents to connect a suspect to a location or artifact of crime follows the pattern of these uses. As with the other uses, for the lineups to be usefully accurate the process has to be as reasonably rigorous as the circumstances permit.

The reliability of the lineup starts with the dog and handler knowing their jobs. Among conventional safeguards apparently are: (a) the handler should not know the scent in a particular can; (b) the staff should wear gloves to prevent contamination; (c) handlers should not be able to see the scented objects in the cans, if they know the source of the objects; (d) dogs should not be on a leash for handlers accidentally or intentionally to cue them; (e) if multiple dogs are used, the cans should be switched between dogs – outside the sight of the handler if he knew the initial locations; (f) scents should be as consistent as practicable – strong with strong, new with new.

At this stage, these facts are assumed. Pikett was where he could see where the scents were placed. He wore no gloves and carried three cans in his left hand. The cans were open – allowing him to see inside. His dogs were on a leash, permitting him to cue them. He used different dogs without moving the scents. He also combined new and old scent pads.

Winfrey insists that Pikett cued the dogs on his scent. For that he has nothing except his speculation. The only evidence presented is that Pikett did not know whose scents were on each pad; another officer placed them. All Winfrey knows is that Pikett handled the dogs.

To undercut Pikett's process and results, Winfrey uses the two-mile trek to his house on the wrong scent. What Winfrey cannot show is that Chris Hammond, whose scent the

---

[1] *Keko v. Hingle*, 318 F.3d 639, 644 (5th Cir. 2003).

dogs used, had not gone that route. The error in the choice of scents was not Pikett's. That tracking and its error are unconnected to the lineups.

In an ordinary assertion of qualified immunity, the analysis has two steps: (a) whether the officer violated rights under the Constitution, and (b) whether the officer's actions were objectively unreasonable at the time.[4] Both questions merge for Pikett.

It is arguable that Pikett's disregard for reliablity was unreasonable. Persistent use of a defective tool can violate the Constitution. Except for the inconsistent scents and contamination, the precautions are to prevent the handler from being able to cue his dogs. For that to be a problem, the potential to cue must itself be fatal to reliance. A handler is not like an eye witness in a human lineup. He is not a witness. He is a policeman who has arrived two weeks after the murder. The better practice may be a blind test for scents and other tangible evidence. The same applies to the inadvertent emphasis from mixing new and old scents and contamination.

Winfrey focuses on Pikett, but he was not the key to Winfrey's prosecution, although he may have contributed to his acquittal. The district attorney had Pikett's results for more than two years without taking the case to the grand jury. He only acted after the facts about the firearms were revealed by the father to his cellmate and confirmed by the officers.

Officers are not required to take each step in their investigation with the safeguards that would make them error free or useable at trial. Officers follow leads from anonymous tips -- hotlines – and conduct practical demonstrations themselves. None of them has scientific rigor, yet they are not unreasonable much less unconstitutional. They are tools, and the results from tools must be evaluated by the officers as the case progresses, the prosecutor who decides to bring the case, and, ultimately, by the jury after bilateral advocacy.

Pikett should have been rigorous in his process, but his casualness does not amount to an abuse of governmental authority. The conclusion of a constitutional transgression is a prerequisite for the second determination of objective reasonableness. Because Pikett's investigation did not violate Winfrey's rights, the objective reasonableness is not reached; however, as a conditional conclusion, Pikett's investigation was reasonable as a step in a murder investigation. Pikett is immune from suit for his lineups and tracking.

---

[4] *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

4. *Sheriff Lacy Rogers and Deputy Lenard Johnson*

Winfrey says former San Jacinto County Sheriff Lacy Rogers and Deputy Lenard Johnson violated his constitutional rights. The officers assert that they are immune.

Government officials are not civilly liable if they do not violate established constitutional rights.[5] Claims are reviewed in two steps. First, whether an officer's conduct violated a constitutional right. Second, whether his actions were objectively unreasonable at the time.[6]

Winfrey says the officers violated his rights when they faked evidence, withheld exculpatory evidence, and coerced testimony. These officers did not violate Winfrey's rights.

A. *False Evidence.*

Fabrication of evidence by an officer is categorically crippled process under the Constitution.[7] Winfrey says that these two men knowingly used faked results from dog-scent lineups to prosecute Winfrey.

Winfrey assumes that Keith Pikett was either grossly incompetent or corrupt, but he has no evidence of either. Winfrey's evidence to show Rogers or Johnson knew the dog-scent lineups were fraudulent is the legal commentary about Pikett; that they must have known. He has an inflated idea of what normal people read. Neither officers had used Pikett in an investigation. They also played no active role in the lineups.[8]

Winfrey also says the sheriff fabricated facts in an affidavit for a search warrant. Sheriff Rogers asserted in an affidavit that the "drop trail" had "used the scent pad from Richard Winfrey, Jr." Rogers knew that the pad had actually had Christopher Hammond's scent. The officers used the affidavit to get DNA from Megan Winfrey.

Although Rogers' search affidavit had a false fact, its use to get hair samples from his sister did not adversely affect Winfrey. Violating his sister's rights could have yielded evidence that implicated Winfrey, but it did not. Rogers's error – for nothing suggests that it was intentional – did not violate Winfrey's rights.

---

[5] *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

[6] *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

[7] *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010).

[8] Rogers aff. (Dec. 14, 2010); Johnson aff. (Dec. 15, 2010).

B.  *Exculpatory Evidence.*

The Constitution obliges the government to disclose facts it has that may help a defendant.[9] Winfrey says that the sheriff did not disclose Pikett's manipulation of the scent identification. He assumes the fact of manipulation. The process was disclosed to Winfrey; it was examined at trial. The sniff test was filmed, and that tape was available to Winfrey. If the officers' intent was to manipulate the evidence, the test would not have been filmed. Filming it and making the video available to Winfrey indicate that the officers believed they were taking proper precautions while conducting the test; it shows they believed they had nothing to hide.

Winfrey says Rogers and Johnson were part of a conspiracy – a conspiracy designed to "suppress" exculpatory evidence so as to not "torpedo" the case against Winfrey. The sheriff and his deputies conspire constantly. They work together under a series of evolving plans and instant responses. What Winfrey has not shown that a single plan was to accomplish something illegal and that it injured Winfrey.

Winfrey is required to describe how Rogers and Johnson were to have *known* of the assumed intentional faking of results in the dog-scent lineup. His evidence is his assertion that Pikett is a clown so they must have known. That is no evidence.

C.  *Coerced Testimony.*

Winfrey says the sheriff's officers coerced false testimony from David Wayne Campbell, the father's cellmate. Coerced testimony violates the Constitution's mandate for rational regularity. He says Rogers and Johnson "staged" his interview and were "trying to manipulate something" and "make a story."

These factless conclusions are also largely contra-factual. David Campbell contacted a jailer – claiming to have information about the murder. He testified a few times that Winfrey Sr. told him particular details about Burr's death. He also said that Winfrey Sr. told him that he had not been involved with the killing. His story never changed. That testimony is neutral toward Winfrey and his sister – neutral or exculpatory toward his father. Whatever effect it had in generating a story, it did not incriminate Winfrey. Even had it been faked, therefore, it did not injure Winfrey.

---

[9] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In his complaint, Winfrey says that Campbell has since recanted. Campbell's supposed recantation was never briefed or argued by Winfrey and no evidence of it is in the record.

As usual, no testimony, no document describes a stage or prestidigitation. The sheriff's people did not violate Winfrey's rights because they did not coerce testimony.

5. San Jacinto County.

To establish the county's civil liability, Winfrey must show that a policy – rather than individual misconduct – caused a constitutional violation.[10] Winfrey says San Jacinto's customs and policies resulted in constitutional violations. Other than the county's use of the dogs in the Burr murder case, Winfrey has pleaded no policy or practice that could support a claim of an unconstitutional policy. Nearly eight months later, in response to the county's motion, Winfrey asserted that San Jacinto County "was the moving force behind the violation of Plaintiff's constitutional rights." Even as another conclusory abstraction, it does not suggest what the county did or how it contributed to a violation of Winfrey's rights. All of Winfrey's legal theories are premised solely on the fact of acquittal.

Winfrey says the motion should be denied because he has not had the opportunity for discovery. He dodges. First, he has had legal representation since he was arrested. That lawyer investigated, interviewed, organized, and used the information about the crime, his client, the officers, and their institutions. Winfrey and his new lawyers had a year to investigate before he sued, as they were obliged by the rules and common sense. By the time this court asked the governments for some of the records, some had been lost, expunged at Winfrey's request, or trashed. Prompt requests by Winfrey's counsel may have obviated their loss.

Since the suit was filed, the court has required San Jacinto County to give him those things that bore on the case – things like the records of the investigation and trial and Campbell's record and resume. On the court's order, the county furnished information about its policies, manuals, and dog-scent lineups. Additional discovery is unnecessary; the essential facts of these events are known. Litigation is not a piñata where you use discovery to whack people to see if something good falls out.

The government had the responsibility to prove that Winfrey had murdered Burr beyond a reasonable doubt; it failed. That is all Winfrey knows. Maybe he should be mad about

---

[10]*Monell v. Dep't of Soc. Serv.'s*, 436 U.S. 658, 694 (1978).

the ordeal, but his anger does not articulate a claim under the Constitution, no matter how it is dressed in lawyer's jargon.

Winfrey's responsibility was to conduct "an inquiry reasonable under the circumstances."[11] He was supposed to submit a short, plain statement of the claim – with sufficient facts to make the claim plausible.[12] Winfrey did neither. He filed 22 pages of poorly-thought legal conclusions and accusations. Not short. Winfrey has three facts: the county used dogs, Campbell came forward, and the jury acquitted him. No material fact is genuinely disputed about the county's role. Winfrey will take nothing from San Jacinto County.

6. *Fort Bend County.*

Winfrey says Fort Bend County had policies for "performing flawed investigations, relying on 'junk science' and failing to provide any oversight over its officers." Fort Bend County maintained none of these policies or practices in this case. The single fact that connects Fort Bend to Winfrey is that it employed Pikett at the time of Winfrey's trial.

Winfrey has no fact in his complaint to suggest a convention of constitutional violations. Winfrey says the motions should be denied because he did not have the opportunity to do discovery. He says he is entitled to conduct discovery before defending his factual support for their allegations.

This is not the law. Winfrey's responsibility was to conduct a reasonable investigation. Fort Bend County did not investigate, arrest, imprison, or prosecute Winfrey. It is dishonest to plead that Fort Bend County had a custom of violating constitutional rights without a single corroborating fact – not one. All Winfrey knew was that Pikett had worked there. After all of the discovery that he has had, Winfrey still knows only that one datum about Fort Bend County.

Since Winfrey did not support his claims with facts, he did not state a claim to start, and after having been supplied with many, many facts, he cannot articulate a material fact in support of his claim.

---

[11] Fed. R. Civ. P. – Rule 11(b).

[12] Fed. R. Civ. P. – Rule 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

7.  *Milton Wright.*

When suing an officer, a party must plead specific facts demonstrating his direct, individual involvement.[13] Milton Wright is the sheriff of Fort Bend County. Fort Bend County employed Pikett as one of its deputies. Winfrey says Wright "turned a blind eye" to Pikett's "frame-up efforts," "failed to intervene to prevent Pikett from committing constitutional violations," and "participated in the conspiracy to frame Winfrey." Wright says he was not part of the case at any stage.

Responding, Winfrey says Wright was personally involved. He knows that because it says so in his complaint. In his pleadings, Winfrey names Wright. Wright is mentioned as a co-conspirator of others. It omits a single fact about Wright, about how we might know he was a partner in crime.

Directing the court to conclusory statements in the complaint does not support a reasonable basis for claiming Wright's malfeasance. It does illustrate, however, that Winfrey's case against Wright is as empty now that he has additional data as it was when it was filed with no data.

8.  *Texas Rangers Huff and Duff*

Winfrey says Texas Rangers Huff and Duff falsified evidence, withheld exculpatory evidence, and conducted a reckless investigation.

A.  *Falsifying Evidence.*

Winfrey says the Rangers used fabricated dog scent lineups to secure Winfrey's arrest and prosecution. The Rangers called a friend in Houston who knew about Pikett, and the local officers called Pikett. In 2004, Pikett's reputation in the law-enforcement community in Texas as a dog handler was very good. He had substantial experience with bloodhounds. The Federal Bureau of Investigation used him in its investigations. Two years earlier, the 14 th Court of Appeals said that he was an expert and that scent lineups were a legitimate field of expertise.[14] The Rangers and others investigators of Burr's murder had no reason to doubt Pikett's

---

[13]*Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

[14]*Winston v. State*, 78 S.W.3e 522 (Texas App. – Houston [14th Dist.] 2002).

reliability. Even if they had had reservations, they do not violate the Constitution by trying weak techniques or pursuing thin leads. They investigate; later, they may have to prove.

Winfrey knows of no fabrication -- no deliberate creation of data known to be wrong -- by Pikett or anyone else. Winfrey knows of no knowledge by the Rangers about Pikett and his dogs in this case that would suggest they thought he or his dogs were a scam.

Nothing suggests that the Rangers fabricated or knowingly used fabricated evidence. The Rangers filmed the lineups, giving Winfrey the tool to discredit their use at trial.

B.  *Excluding Exculpatory Evidence.*

The government must disclose exculpatory evidence to a criminal defendant.[15] Winfrey says the Rangers violated this constitutional right when they did not disclose that Pikett rigged the dog scent lineups. Nothing suggest that the Rangers had anything to keep secret or that they had any role in the decisions not to disclose whatever it was. Winfrey repeats his daisy chain of accusations, using each grand abstraction to support the next.

C.  *Reckless Investigation.*

An officer violates the Constitution if he detains, arrests, or investigates someone without a reasonable suspicion.[16] The Constitution protects people from abuses of power; it is not a source of ordinary personal-injury law. An investigation that is confused, weak, or slipshod does not offend the Constitution.[17]

Winfrey says Huff and Duff investigated recklessly because they did not pursue other suspects like Tracy Brown. Brown is Burr's niece. She had a motive to kill Burr because she was the beneficiary of his life insurance. Apparently, Brown went on a two-week vacation immediately after Burr's death. This information would have been known to officers in a county of 26,000.

Huff and Duff did not conduct a reckless investigation by relying -- in part -- on Keith Pikett's scent lineup. They concluded that Brown's decision to go on a vacation was not sinister.

---

[15]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[16]*Ornelas v. United States*, 517 U.S. at 695; *Illinois v. Gates*, 462 U.S. at 235.

[17]*Sanders v. English*, 950 F.2d 1152, 1159. (5th Cir. 1992).

Whether she had had the means and the plans before is not known. In either case, the Rangers examined the facts; that is reasonable. If their conclusion was wrong, that does not make it negligent. It certainly was not reckless.

9.   Conclusion.

At best, this is a case about a negligent investigation. Nothing suggests the officers had personal animosity or hostility towards Winfrey or his family.

Richard Winfrey, Jr., has no evidence to support a single one of his accusations. He will take nothing by his action against these governments and people.

Signed on July 9, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge