Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD WINFREY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:10-CV-1896 |
| | ) |
| SAN JACINTO COUNTY, et al., | ) |
| | ) Judge Lynn N. Hughes |
| Defendants. | ) |

### AFFIDAVIT OF STEVEN NICELY

I, Steven Nicely, hereby affirm under penalty of perjury, that if called to testify at trial, I would testify consistent with everything in my affidavit, which I hereby adopt and incorporate into this affidavit and thereby swear thereto.

### AUTHOR

I, Steven D. Nicely, have been involved in the police service dog field for over 30 years. During that time I have trained approximately 750 dogs for some form of police service all of which were required to make some form of odor detection. I have also trained hundreds of handlers; numerous trainers and supervisors. For additional information see my attached CV.

### PURPOSE OF REPORT

The purpose of this affidavit is to provide and opinion of the procedures followed by Deputy Pikett and promoted by the Fort Bend County Sheriff's Office to determine if they were proper for determining the abilities of the dogs used to conduct *stimulus discrimination*. This affidavit will also provide information that can improve can reduce the accuracy of the Scent ID dog. *Stimulus discrimination* is the core of all detector dog training, testing, and certifications. It will also help those involved make an informed decision about the actions of Deputy Pikett for legal purposes of this case.

### HANDLER AND TRAINER EXPECTATIONS

**Experimenter Bias or Unethical Actions**

A factor that is often overlooked is the expectations of handlers and trainers of detector dogs. In this instant, Deputy Pikett is the handler and trainer, as well as the evaluator. Deputy Pikett opinions of

EXHIBIT L                                Page 1 of 12

EXHIBIT 29

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

his dog's performance could be based on *experimenter bia[1]*. Evidence provided in this case and my past experience with Deputy Pikett supports Deputy Pikett and the Fort Bend County Sheriff's Office takes no action to reduce the possibility of *experimenter bias*. While it is possible experimenter bias is the factor, in this incident based on the evidence provided, and my past experience with Deputy Pikett it is more probable the outcomes of the Scent ID's he performs with his dogs are based on what I consider unethical actions. Those actions will be explained in different parts of this affidavit.

## Unconscious or Conscious Actions that Effect an Animal's Performance

*Clever Hans Effect* is subconscious actions of a human that influence the behaviors of an animal. In 1904 Dr. Oskar Pfungst discovered the horse's response to questions was based on the actions of persons the horse could see. Prior to Dr. Pfungst studying *Hans*, Germany established the *Hans Commission*. The *Hans Commission* consisted of a number of scientists, and others associated with the training of animals. Those involved in the *Hans Commission* included two zoologists, a psychologist, a horse trainer, several school teachers, and a circus manager. They concluded *Hans* could solve math problems and spell, and was not being influenced by human actions. Their failure to recognize actions that influenced *Hans* is understandable. Animals such as horses and dogs that interact with humans learn subtle cues. It has been revealed dogs can react to as subtle action as human breathing and heart rate. It must be understood because someone does not see the human behavior does not mean they do not exist.

> "Professional dog trainers can sometimes control dogs better than their owners, and often dogs obey the trainers' commands better even during their first interaction. These findings suggest that there is a skill to giving commands, and appropriate rewards, or punishment, to elicit desired behaviors from dogs" (M. Yamamoto, 2009).

When determining if cueing occurred relying on observations of behaviors exhibited by the handler may cause incorrect conclusions. For this reason other elements must be analyzed. Also, it must be understood not only can a handler induce a behavior; the handler can also prevent a behavior.

This affidavit will identify elements that support cueing occurred. The lineup procedures used by Deputy Pikett supports behaviors the dogs do exhibit are more likely to be induced by conscious actions than unconscious actions.

---

[1] Experimenter Bias was termed by Dr. Rosenthal in the 1960's. In behavioral science (the core science for detector dogs) someone who has no expected outcome of the observed performance, and does not know when and if the target stimulus is present are often used to help reduce experimenter bias. In other words double-blind testing is used.

Page **2 of 12**

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

## SCENT ID PROCEDURES USED BY DEPUTY PIKETT OF THE FT. BEND COUNTY SHERIFF'S OFFICE

Deputy Pikett testified in *State v. Richard Lynn Winfrey* Cause No. 9751, that "potentially, if we could be helping put somebody in jail, I want to be as sure as possible that this is accurate." (See page 30 of Excert of Trial on Merits Testimony of Keith Pikett) The Scent ID process used by Deputy Pikett contradicts that Deputy Pikett is taking steps to be as sure as possible that his dogs are accurate. I have reviewed several Scent ID's conducted by Deputy Pikett in each one Deputy Pikett:

- Pikett's vehicle was parked where the cans could be clearly seen from the vehicle,
- the cans were open,
    - walked by facing downward and close enough to the can to see inside,
- does not state which can the dog is alleged to have target is in until he has been in a position to look into each can,
- and takes more than one dog over the same line-up.
- Non-Target Scent Pads are old pads as compared to the target pads.

"Currently, handlers in all countries using scent identifications line-ups are aware of the influence they can exert, with body language and they try to keep still and not influence the dog in any way" (A. Schoon, 2002, p. 111).

The procedures used by Deputy Pikett are more consistent with him using his ability to see inside the cans and identity which can contains the target pad than relying on his dogs to identify the can by odor. Those elements will be discussed in greater detail in this affidavit.

### Pikett's Vehicle Was Parked Where the Cans Could Be Clearly Seen from the Vehicle

In the video Bates# 2577 Deputy Pikett's vehicle is visible and in Bates #2578 it cannot be seen. However, in Bates 2578 his approach to receive the scent item and his departure is suggestive the vehicle is close by. In past videos I have observed of Deputy Pikett conducting Scent Lineups his vehicle was seen. With today's various communication abilities Deputy Pikett should depart the area while the lineup is being designed and be called back. By leaving the area Deputy Pikett reduces the possibility of being accused of cheating by watching were the pads are being placed. Deputy Pikett remaining nearby where the lineup is being set up gives him the ability to observe the process and see which can the target is being placed.

### Open Cans

It is agreed there should be some form of ventilation to allow the odor to easily exit the cans. To prevent the allegation of being able to see the scent pad container and identify and distinguish between

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

target and non-target Deputy Pikett should have provided cans with holes no larger than ¼ inch. This would eliminate his ability to see inside the can. By eliminating his ability to see inside the cans, it would eliminate the possibility he is cueing the dog based on what he sees. Deputy Pikett allowing open cans in which he can see inside supports he is using his ability to see inside and intentionally induces behaviors that may be seen by a dog. The outcome of the Hans Commission demonstrates the fact that cues can be so subtle that observing humans cannot see them.

### *Scent Transfer*

Another element of concern with open cans, and the method in which they are placed is scent transfer from the target can to a non-target can. Page 39 of Deputy Pikett's testimony in *State v. Richard Lynn Winfrey* he is asked about scent transfer. Deputy Pikett states "if I touch this gentleman and then shake his hand and then touch this Kleenex box, I can put his scent on this Kleenex box." Anyone who has ever trained a dog for any form of odor detection task understands scent transfer is something that must be avoided.

Deputy Pikett's actions are not consistent with attempting to prevent possible cross contamination that could cause the dog to respond to a non-target can. Based on his statements as it relates to odor transfer it would be reasonable to believe 1) he does not truly believe odor transfers as he claims, or 2) he is not concerned about odor transfer because he is relying on something other than odor.

In the video Bates 2577 Deputy Pikett can be seen carrying three cans in his left hand as he points in a direction in from of him. He is wearing no gloves. In the first (Bates 2577) session the dogs had their nose closer to the can than in Bates 2578. During Bates 2578 the first dog for the first two cans is sniffing the ground to the left of the cans. Deputy Pikett is seen jerking on the dog's leash to attempt to prevent this from occurring. As the dog approaches can #4 the dog's head is at least 1 foot from the ground. The 2nd dog in Bates 2578 nose appears to be never any closer to can #4 than 1 foot. Of the three dogs used the third dog is the only dog that touched the can. Deputy Pikett claims the dog's reaction when it detects the target odor is sometimes jumping up on him. In this incident as the dog nears the can Deputy Pikett jerks backward on the leash and stops; the dog turns around and jumps up on him. If Deputy Pikett had not jerked on the leash and stopped it is very likely the dog would have sniffed the can and continued on. Deputy Pikett's actions with the 3rd dog at can #4 were consistent with attempting to induce a behavior.

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

> "When the video of the sniff on 03/21/2006 is reviewed, one will see the first two finds were at can # 4. Then the items (not the entire can) are switched to can # 2. After that, the items are again switched to can #6. The search of the cans use the same starting point and based on that starting point the report of 03/21/2006, it is clear that they start at position #1 each time.
>
> Each time the dog is alleged to have responded (alerted) to the presence of the target odor. All dogs' noses were at least dog shoulder height. If the dogs were in fact detecting and responding to the odor the odor was rising approximately 2 feet or more from the source. The odor would also be spilling over into the cans. If the cans were not collecting odor then the entire concept of *scent line* cannot work because one would need to accept the proposition that odor cannot transfer from one item to another" (Michael Buckanek vs. City of Victoria, , Richard Jones, Sam Eyre, Sheriff T. Michael O Connor, Tom Copeland, Anthony Daniel, The County of Victoria, Texas, Keith Pikett, and Fort Bend County, Texas). ( See page 14 of Affidavit of Steven D. Nicely)

Based on how the cans are handled and the known fact that odor does in fact transfer makes more likely that Deputy Pikett is not relying on his dogs identifying the target odor and responding. This further supports Deputy Pikett consciously influences any behaviors seen by one of his dogs at or near the target can.

### *Walking Facing Downward and Close Enough to the Can to See inside*

With the cans being open walking face down increases the probability that Deputy Pikett is looking into the cans for a specific package. When using an open lid the dogs should have been trained to look for the cans on this own. Because Deputy Pikett does not teach his dogs formal obedience keeping the dogs on leash during the Lineup process is understandable. However the leash should be 20-30 feet long. That way the dog would be reach the can is sufficient time to respond before Deputy Pikett reached the can. Deputy Pikett walking next to the dog and facing downward supports that he is not relying on the dog but looking into the can and attempts to cause the dog to respond. Deputy Pikett actions are more consistent with conscious influence should the dog exhibit a behavior change at or near the target can.

## Does Not State Which Can the Dog Is Alleged to Have Target Is in until He Has Been in a Position to Look into Each Can

Deputy Pikett identifying the can where he alleges the dog responded after he has had a chance to look inside further supports he is not relying on the dog. His failure to identify the can believed to target scent pad in it when it is alleged the dog identified it further supports that Deputy Pikett is not relying on his dogs to identify the can with the target pad , he is relying on his ability to see inside the can.

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

## More Than One Dog over the Same Lineup

The concept of using more than one dog to potentially identify a target odor is acceptable when done correctly. Deputy Pikett's process is not correct. Having the same odors in the same lay out and Deputy Pikett knowing where the dog is alleged to have responded makes the additional one invalid. Deputy Pikett should instruct the placement of the odor be rearranged each and every time. Even if the possibility of Deputy Pikett being able to see where the target was placed was eliminated taking a different dog over the very same lineup arrangement by makes it invalid. Deputy Pikett's claim the dog's support each other should be rejected.

## Fresh vs. Old Scent Pads

Deputy Pikett should not be providing scent pads as a distractor that was not taken at the same time the target pad was taken. "This leads to a scent picture of the matching odor to be fresher, or stronger, than the other odors in the line-up' (A. Schoon, 2002, p. 72). In tracker dogs that are not trained using a pre-scenting method, they naturally follow the freshest track. This is an act of nature for dogs. Deputy Pikett's failure to insure that scent pads for discrimination purposes are taken at same time the target pad is taken supports he is not doing everything reasonably possible to attempt to eliminate the probability of incorrectly identifying the wrong individual.

## AFFIDAVIT FOR SEARCH WARRANT JANUARY 6TH 2005

The search warrant affidavit contains information that attempts to imply the dogs used in the scent ID process were reliable. The warrant states the number of times each dog has been used and for what purpose. This information alone is not support the dog is reliable and to what degree of reliability can be expected. At the time of this incident it appears that Quincy with used 31 times in person scent ID, and 400 times in its scent pad ID. The critical number is not the number of times the dog is being used but the number of times when the dog was used and was said to have exhibited behaviors that caused the handler to believe the target odor was present and it was verified by some form of forensic testing, or court accepted confessions of the person identified to include guilty plea. Quincy, for example, has a total of 431 scent ID's. If only 43 of the claimed identifications were confirmed would a warrant been issued?

From a trainer and instructor stand point, his failure to follow up on each incident the dog responds demonstrates he has no concern about the accuracy of the dogs.

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

In Deputy Pikett's testimony in Richard Winfrey Jr.'s trial that occurred on June 11, 2009 Deputy Pikett (pages 32-33) stated Quincy has 1058 felony trails, and 2831 lineups, and Quincy has been shown to be wrong on three of them. His statement that Quincy has been shown to be wrong on three of them should not be considered accurate because he fails stay abreast of the outcome of each time he claims a dog identified someone associated with a crime scene. Of the 30+ years of experience with dogs to this date, I have never seen or found a dog that was 0.08% accurate.

## LINE UP VIDEO BATES

### Bates #2578

Date shown on the video is August 22, 2007. In the lineups the target was in can #4. Three different dogs are run on the same lineup arrangement. It appears that Deputy Pikett slows and shortens his steps after can #3 in each incident.

### Line video bates no# 2577

On the first session before Quincy turned to its right you can see Deputy Pikett make a sudden upward movement (jerk) with his leash hand. Line up #2 Jag stops and turns around after Deputy Pikett stops. Line up# 3 Quincy turns to its right and Deputy Pikett directs the dog to continue. This demonstrates the claimed turn to the right is not induced by the target odor. Quincy did not exhibit the same behavior when it reached can 6 as it did on can 4 in the first lineup. It should be noted if Quincy's turning to the right in the area of can 4 during lineup #3 was caused by the target odor traveling from can 6 Deputy Pikett would not have had to direct the dog to continue. It would have done so on its own.

In line up #3 was run a second time with Quincy after the cans was moved. Order was not changed. In that incident Quincy did not turn until after Deputy Pikett stopped. Deputy Pikett should not have stopped before the dog stopped. His stopping appears to be one of his cues to this dog.

Jag was used in lineup #4 the target was in can 6. During the lineup Deputy Pikett stops and Jag turns around and comes toward him. Deputy Pikett's stopping appears to be the cue for this dog.

During lineup 5 and 6 Deputy Pikett does not stop the dogs do not stop.

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

# TEXAS VS. RICHARD LYNN WINFREY JR. EXCERPT TRIAL ON THE MERITS TESTIMONY OF KEITH PIKETT JUNE 11, 2009

**Page 14**

    Deputy Pikett is questioned if scent ID is accepted as scientific evidence. Pikett acknowledges that canine scent is accepted as valid scientific knowledge. I agree. Dogs trained to get conduct scent ID must follow the rules of behavioral science. However, Deputy Pikett fails to follow one of the most critical rules in Behavioral Science and that is detailed documentation. Documentation should be in sufficient detail to allow the test to be reproduced to determine if the same results can be obtained (Cozby, 2007). When behaviors are assessed for potential legal use records must be kept in an adjudicated form (J. Bailey, 2005).

**Page 35**

    Deputy Pikett's stated "actually, dogs are like humans. They are thinking, "Did I screw up? I didn't find anything" is not supported by the behavioral science field. Deputy Pikett's statements in this regard are anthropomorphism.[2] ""All animal behavior is learned or instinctual or used for problem solving; there is no malice, jealousy, or envy that prompts anything they do" (Understanding Animal Behavior Don't Think Like a Person, 2010). He also stated he always reinforces the dog even in actual cases. Reinforcing an animal (to include humans) outside of a controlled environment is a violation of the *contingency of reinforcement* (reinforcement rules). Because of the possibility of establishing the animal learning something it should not.

    Deputy Pikett also made reference to reinforcing the dog's behavior every time. Reinforcing a behavior every time after the task has been learned is counterproductive. Research has revealed the most productive reinforcement schedule is variable ratio. For example, "beginning trainers may find it harder to use a variable ratio schedule. In attempting to randomize reinforcement, inexperienced trainers often spread the schedule of reinforcement to thin that the dog stops responding" (M. Burch, 1999, p. 39). As a trainer it has been my experience that reinforcing the dog in real world conditions can lead to *superstitious behaviors* (incorrect responses) by the dog because it can learn to respond to incorrect stimuli. Further taking the dog back to the vehicle and reinforcing the dog is not reinforcing the

---

[2] Anthropomorphism: the attribution of human characteristics to nonhuman entities such as deities, sprits, animals, plants, or inanimate objects. From the scientific point of view, this must be considered a primitive and erroneous mode of thinking; nevertheless, it remains a fundamental tendency of the human imagination as reflected in language, religion, and art. (VanderBos, 2007)

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

dog for the claimed response to an odor in a can it is reinforcing the dog to go back to the vehicle. Animals do not have the cognition of humans. Deputy Pikett's statement and description of his actions are more consistent with someone who follows myth and folklore instead of someone who has the scientific background he claims to possess. Also, Deputy Pikett actions support he should be considered a beginning trainer.

## Pages 80-81

A trial conducted by Deputy Pikett that occurred on August, 24, 2004 was addressed. Deputy Pikett was asked if he conducted a trail on what he thought was Mr. Winfrey, Jr. He stated he did not know whose scent it was supposed to be yet Supplement to Case #32172 -San Jacinto Sheriff's Department- Homicide-By Deputy K. Pitett FBSO 330, states "the scent discriminating Bloodhound, was scented at the victim's trailer at 851 Willow Springs using the scent pad from Richard Winfrey Jr. If Deputy Pikett's report is accurate then he in fact believed he was following the odor of Richard Winfrey Jr.

*It should be noted the report provided to me referencing the lineup conducted on August 24, 2004 received for analysis in the <u>Winfrey</u> civil case has different content than the same report provided as a result of discovery in the <u>Buchanek</u> civil case. At this time, the documents received during the <u>Buchanek</u> civil case are under protective order and the contents cannot be revealed, by me, absent a court directive.*

## Page 86-94

In these pages Deputy Pikett is questioned about the scientific application for Scent ID dogs. Scent ID dogs should demonstrate their ability to perform *stimulus discrimination*. When conducting *stimulus discrimination* the breed is not important. The question to be answered in a Scent ID dog is when provided the *discriminate stimulus*. In Scent ID dogs the *discriminate stimulus* is the odor provided to the dog immediately prior to conducting the lineup. The science behind Scent ID dogs is Behavioral Science. When tested properly the accuracy rate of a particular dog under certain circumstances can be predicted. The validity of training and testing can be established by following up on all responses in field conditions and determining if the response is supported by valid information. Validity of training and testing can be supported by conducting statistical analysis of each outcome to determine if they have external validity. Deputy Pikett to this date has not provided any documents that reflect the dogs' accuracy in training or testing, and verified accuracy in real-world conditions.

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

## CONCLUSION

Based on the information provided, and prior knowledge of Deputy Pikett it is my opinion that he and the Fort Bend County Sheriff's Department have no regards to right of others. They take no action to attempt to identify the fallibility of the dogs used that have led to searching, arrest, and sometimes conviction of the accused. Deputy Pikett refuses follow up on times when the dog identified someone as a potential suspect to try to determine the possible accuracy of his dogs. Likewise, the Fort Bend County Sheriff's Office does not mandate such actions be taken. Their failure to maintain and record results to establish statistical probability of accuracy demonstrates they have no desire to protect someone from being falsely accused based on the use of Scent ID dogs.

Neither Deputy Pikett nor the Fort Bend County Sheriff's Office takes actions to eliminate the possibility he is relying on his visual observations of what is or is not seen inside a can. The fact that Deputy Pikett could see in the can and Fort Bend County Sheriff's Office has no provided written policies and guidelines to prevent this from occurring demonstrates that Deputy Pikett was improperly supervised.

The majority of people involved in the training, testing, and handling of detector dogs learn the process through apprenticeship. Detector dogs should be considered a part of forensic science. "Apprenticeship has a secondary role, and under no circumstances can it supplant the need for the scientific basis of education in and the practice of forensic science" (National Research Council, 2009, pp. S-20). Deputy Pikett stated on page 88 of his testimony that "[n]obody is sending me articles, and I'm not privy to what they are doing at universities." While it would be near impossible to locate every article produced relating to research in this area and to be up to date on every university research in the area of detector dogs, but it is apparent Deputy Pikett has done no research to attempt to find studies relating to detector dog training and testing. Deputy Pikett's failure to attempt to stay abreast of the science behind discrimination training, and testing as well as his failure to stay up to date on incidents he claims his dog identified someone's odor associated to an incident supports Deputy Pikett actions are improper.

Deputy Pikett and his dogs have never been tested by an independent source. The fact he does not or the Fort Bend County Sheriff's Department does not mandate an independent certification supports that Deputy Pikett knows his dogs do not perform to the level he claims, and the Sheriff's Department is also aware the dogs are not as accurate as claimed.

Affidavit of Steven Nicely in the case of R. Winfrey,Jr v. San Jacinto County, et all...

From a training and instructor, view Deputy Pikett and the Fort Bend County Sheriff's Department's actions are it relates to the training, testing, and deployment of Deputy Pikett's dogs are at the very least unacceptable.

## BIBLIOGRAPHY

*Understanding Animal Behavior - Don't Think Like a Person*. (2010, September 20). Retrieved January 11, 2011, from Knowing Animals: http://www.knowinganimals.org/2010/09/understanding-animal-behavior-%E2%80%93-dont-think-like-a-person/

A. Schoon, R. H. (2002). *K9 Suspect Discrimination - training and practicing scent identification line-ups*. Calgary: Detseling Enterprises.

Cozby, R. (2007). *Methods in behavioral Research 9th Edition*. Mc GrawHill Higher Education.

J. Bailey, M. B. (2005). *Ethics for Behavioral Analysts*. Lawrence Eribaum Association.

M. Burch, J. B. (1999). *How Dogs Learn*. New York: Wiley Publishing.

M. Yamamoto, T. K. (2009). Influence of delayed timining of owners' actions on the behavior of their dogs, Canis familiaris. *Journal of Veterinary Behavior*, 11-18.

Michael Buckanek vs. City of Victoria, , Richard Jones, Sam Eyre, Sheriff T. Michael O Connor, Tom Copeland, Anthony Daniel, The County of Victoria, Texas, Keith Pikett, and Fort Bend County, Texas, Case No: 6:08-CV-00008 (US District Court for Southern District of Texas Victoria Division).

National Research Council. (2009). *STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES "A Path Forward"*. Washington D.C.: THE NATIONAL ACADEMIES PRESS.

VanderBos, G. R. (2007). *APA Dictionary of Psychology*. Washington D.C.: Amerrican Psychology Association.

Affidavit of Steven Nicely in the case of R. Winfrey, Jr v. San Jacinto County, et all...

*[signature]*

Steven Nicely

Date  1/27/2011

Subscribed and sworn before me on this __27__ day of January 2011

*[signature]* Pamela M Charf

Notary Public, State of ~~Texas~~ Nebraska

GENERAL NOTARY-State of Nebraska
PAMELA M. CHARF
My Comm. Exp. May 22, 2014