IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD WINFREY, JR. and MEGAN WINFREY | ) ) ) |
| Plaintiff, | ) No. 4:10-CV-1896 ) |
| vs. | ) Judge George Hanks, Jr. ) |
| LENARD JOHNSON, | ) ) |
| Defendant. | ) |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs Richard Winfrey, Jr. and Megan Winfrey, through counsel, hereby respectfully file this motion for attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d), with the Memorandum of Law in Support as follows.

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

Gayle Horn
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
O: 312.243.5900
gayle@loevy.com

## TABLE OF CONTENTS

MEMORANDUM OF LAW ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

ISSUES PRESENTED AND STANDARD OF REVIEW ................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.   The Hourly Rates Requested Are Reasonable .......................................................... 4

    II.  The Hours Expended by Plaintiffs' Attorneys Are Reasonable ............................. 11

    III. Costs and Expenses Taxable under 28 U.S.C. § 1920 and 42 U.S.C. § 1988 ........ 14

CONCLUSION .................................................................................................................... 15

**MEMORANDUM OF LAW**
**Certificate of Conferral**

Plaintiffs have conferred with Defendant about this petition for attorneys' fees and costs. They conferred via email and in a subsequent telephone call on October 1, 2020. Defendant's position is set forth in the attached email. Ex. 11 (Giles email).[1]

### NATURE AND STAGE OF THE PROCEEDING

A jury trial took place in February 2020. The jury reached a verdict on February 18, 2020. Dkt. 266. The Court ruled on post-trial motions and entered final judgment in favor of Plaintiffs on August 20, 2020. Dkt. 303. On September 9, 2020, Defendant Johnson filed a notice of appeal. Dkt. 307.

### ISSUES PRESENTED AND STANDARD OF REVIEW

Whether the attorneys' fees, costs and expenses requested by Plaintiffs in this motion are reasonable and should be awarded. The standard of review is: "In any action or proceeding to enforce a provision of section[] … 1983 … of this title … the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs…." 42 U.S.C. § 1988.

### SUMMARY OF ARGUMENT

Plaintiffs' attorneys obtained an exceptional result for their clients in a difficult case. The jury rendered verdicts for Richard Winfrey, Jr. and Megan Winfrey against defendant officer Lenard Johnson totaling $1 million. Plaintiffs achieved this result in no

---

[1] The parties also discussed in their phone call that they may file a joint motion to stay the rest of the briefing (e.g., response brief and reply brief) on this fee petition and bill of costs until the pending Fifth Circuit appeal is resolved.

1

small part because of the skill, expertise, and dedication of their attorneys, who have been working on this case for *over ten years* in order to achieve this result.

Civil rights cases brought to redress constitutional violations occurring during the course of a criminal investigation and prosecution are a highly specialized area of federal practice. These cases require mastery of complex constitutional issues. Few firms are as experienced in and as dedicated to this practice area as Loevy & Loevy.[2] And fewer firms still would have dedicated 2,100 hours (totaling $798,000.00) of attorney and paralegal time and $61,197.64 in costs that it took to win this difficult case – especially when the defense counsel vigorously opposed Plaintiffs at every turn for a decade.

Despite the significant and continuing *ex ante* risk of an unfavorable result, Plaintiffs' counsel never backed off, investing the tremendous amount of time and money necessary to secure for Plaintiffs the outstanding result that was achieved, after multiple trips to the Fifth Circuit. In light of the success achieved, Plaintiffs' lawyers are entitled under federal law to recover their reasonable attorneys' fees and costs for the services that they have provided. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fees and costs sought by Plaintiffs' counsel here are reasonable.

## ARGUMENT

Under familiar principles, the lodestar amount, derived by multiplying reasonable hours expended by a reasonable hourly rate, is the presumptively appropriate measure of

---

[2] *See, e.g.*, *Jimenez v. City of Chicago*, 2012 WL 5512266, at * (N.D. Ill. Nov. 14, 2012) (Loevy & Loevy is "one of the premier Chicago-area law firms concentrating in plaintiffs' section 1983 litigation" which has "an impressive record of success in plaintiff's civil rights litigation.").

the fee award. *Hensley*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). "There is a strong presumption of the reasonableness of the lodestar amount." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)); *see also Murphy v. Smith*, 138 S. Ct. 784 (2018) ("Our cases interpreting § 1988 establish [a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a reasonable fee.") (internal quotation marks omitted). "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551. Parties seeking an award of fees and expenses have the burden to show that the hours expended were reasonable. They may do so by submitting contemporaneous billing records or other documentation sufficient to allow the court to conduct a meaningful review of whether the hours were reasonably expended. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997). A "reasonable" fee is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. *Perdue*, 559 U.S. at 551.

The purpose of Section 1988 is to "ensure that federal rights are adequately enforced." *Id*. at 550. There can be no dispute that the jury verdict and final judgment conferred "prevailing party" status on Plaintiffs. A party "prevails" if he succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.

In this case, Plaintiffs' lodestar is amply justified, and the costs expended were reasonable and appropriate for the result achieved. Accordingly, Plaintiffs ask the Court to award attorneys' fees of $798,000.00 under 42 U.S.C. § 1988; litigation expenses of $35,780.22 under 42 U.S.C. § 1988; and costs of $25,417.42 under 28 U.S.C. § 1920.

## I.   The Hourly Rates Requested Are Reasonable

A reasonable hourly rate is the rate that lawyers of similar ability and experience charge for their work. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). "The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community …." *Blum*, 465 U.S. at 895. Furthermore, "[a] court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" *Fox v. Vice*, 563 U.S. 826, 834 (2011) (quoting *Hensley*, 461 U.S. at 435)).

Plaintiffs seek the following rates:

| Attorney | Hourly Rate |
|---|---|
| Debra Loevy (*see* Ex. 1)<br>(University of Michigan, 1995) | $450 |
| Gayle Horn (*see* Ex. 2)<br>(New York University, 2004) | $400 |
| Elizabeth Wang (*see* Ex. 3)<br>(University of Chicago, 2005) | $400 |
| Paralegals Brian Swift, Lauren Lebata and Andrew Garden (*see* Exs. 4, 5, 6) | $125 |

Attorney Elizabeth Wang and Loevy & Loevy paralegals were awarded these rates in 2018 and 2019 in *Awalt v. Marketti*, 2018 WL 2332072, at *2-*3 (N.D. Ill. May 23, 2018), and *Wheatt v. City of East Cleveland*, 2019 WL 4071646, at *12 (N.D. Ohio Aug.

4

29, 2019), both civil rights cases. The hourly rates sought by Debra Loevy and Gayle Horn are on par with what has been awarded to other Loevy & Loevy attorneys with a similar level of experience in constitutional litigation. *See Holmes v. Slay*, 2017 WL 994473, at *3 (E.D. Mo. Mar. 15, 2017) (awarding $400 per hour to Roshna Bala Keen, who, like Ms. Horn, is a 2004 law school graduate);[3] *Awalt*, 2018 WL 2332071, at *2-*3 (approving $450 per hour to Daniel Twetten, a 2001 law school graduate, and $550 per hour to Jon Loevy, a 1992 law school graduate);[4] *Wheatt*, 2019 WL 4071646, at *12 (approving $425 per hour to Mark Loevy-Reyes, a 1992 law school graduate). These rates are far lower than the rate awarded to lawyers with similar credentials and years of experience in *Adhikari v. Daoud & Partners*, 2017 WL 5904782, *14 (S.D. Tex. Nov. 30, 2017) (holding that rate of $745 per hour for 1996 law school graduate, Agnieszka Fryszman, was reasonable).[5] These rates are comparable to rates approved for attorneys with similar years of experience in other cases in this district. *See Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 385 (S.D. Tex. 2016) (Hanks, Jr., J.) (approving $500 per hour for attorney with over 21 years' experience and $300 per hour for attorney with three years' experience); *see also Jane Roe/Rachel V. Rose v. BCE Technology Corp.*, 2014 WL 1322979, at *3 (S.D. Tex. 2014) ("Courts in and around Houston have found hourly rates

---

[3] *See* https://loevy.com/attorneys/roshna-bala-keen/
[4] *See* https://loevy.com/attorneys/jon-loevy/ and https://loevy.com/attorneys/daniel-m-twetten/
[5] https://www.cohenmilstein.com/professional/agnieszka-fryszman

5

between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case).[6]

The Supreme Court in *Hensley* instructed lower courts to consider these factors in deciding the reasonableness of rates:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430 n.3; *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *Migis*, 135 F.3d at 1047. In this case, the *Hensley* factors demonstrate ample support for Plaintiffs' attorneys' hourly rates.

By far "'the most critical factor'" in determining the reasonableness of a fee award "'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). By any measure, Plaintiffs' counsel achieved an

---

[6] The rates awarded to the plaintiffs' attorneys in *Tubby v. Allen*, 2019 WL 4565072 (E.D. Tex. Sept. 3, 2019), are also comparable and provide support for Plaintiffs' proposed hourly rates here. *Tubby* was a Section 1983 civil rights case. The lead attorney for plaintiff in that case was Gregory Kulis, who has been a practicing lawyer for over 30 years and had his rate adjudicated by the federal court in Chicago at $475 per hour in 2011. In *Tubby*, Kulis sought a rate of $550 per hour, which the court approved.

6

excellent result in this case: a verdict totaling $1,000,000.00. This is a noteworthy verdict in a civil rights case in this jurisdiction. This is especially true given the difficulty of the factual questions, which is the second *Hensley* factor.

With respect to *Hensley*'s reference to "the experience, reputation, and ability of the attorneys," Plaintiffs' attorneys respectfully submit that their credentials are on par with attorneys practicing at the most renowned firms (and especially civil rights firms) in the country. *See* Exs. 1-3 (Declarations of Loevy, Horn, and Wang). If they worked at large, commercial firms, Plaintiffs' lawyers would command top-tier market rates exceeding the rates requested in this petition. Although Plaintiffs' attorneys took a different path than their peers at those firms, pursuing careers in civil rights litigation, they strive to provide their clients with the same premium legal services enjoyed by the clients of the world's most prestigious firms. *See Riverside v. Rivera*, 447 U.S. 561, 578 (1986) (Section 1988 is designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"). Moreover, few civil rights firms in the country match Loevy & Loevy's experience and expertise litigating § 1983 cases, and malicious prosecution or wrongful conviction cases in particular. *Supra*, n. 2. The credentials, experience, and past successes of each of Plaintiffs' attorneys—particularly in civil rights cases—are discussed in detail in their declarations. This *Hensley* factor, too, supports the proposed hourly rates.

Likewise, "the skill requisite to perform the legal service properly" was great. Plaintiffs prevailed in all four appeals in the Fifth Circuit (three involving Johnson; one

7

involving Pikett). *Richard Winfrey, Jr. v. San Jacinto Cnty.*, 481 F. App'x 969 (5th Cir. 2012) (*Winfrey I*); *Richard Winfrey, Jr. v. Rogers*, 901 F.3d 483 (5th Cir. 2018) (*Winfrey II*); *Megan Winfrey v. Pikett*, 872 F.3d 640 (5th Cir. 2017); *Megan Winfrey v. Johnson*, 766 F. App'x 66 (5th Cir. 2019). And lead counsel representing Defendant Johnson is a very experienced and skilled trial attorney who has been practicing law for decades longer than Plaintiffs' counsel.

Plaintiffs' attorneys' rates are also justified given their specific work in this case. For instance, Elizabeth Wang was the attorney-in-charge. She did everything from investigate and research potential claims for Megan Winfrey's complaint, attend hearings, write responses to multiple rounds of dispositive motions, write *Daubert* motions and responses, take depositions and draft written discovery, shape discovery strategy, write multiple appeal briefs, prepare pretrial filings, and lead the trial team. *See* Ex. 3. Likewise, Gayle Horn was a co-lead litigation and trial attorney. She investigated Richard Winfrey, Jr.'s claims from the beginning, drafted his complaint, took depositions and assisted in drafting written discovery, shaped discovery strategy, wrote briefs and motions, and assisted with the appeals. *See* Ex. 2. She was also Ms. Wang's trial partner and co-led the trial team. Like Ms. Wang, Ms. Horn has worked with dedication on her clients' case for over 10 years. Without Ms. Wang's and Ms. Horn's expansive factual knowledge of the case, legal expertise in constitutional issues and the Federal Rules, strategic approach to the litigation, and dedication to their clients, Plaintiffs would not have achieved the outstanding result in this case.

Additionally, Debra Loevy is an appellate lawyer with 25 years' experience who worked on the first summary judgment response in 2010-2011 and the first appeal (*Winfrey I*) in 2011-2012. She also provided valuable insights and edits for the briefs and arguments for Richard Winfrey, Jr.'s second appeal in 2017. *See* Ex. 1.

Another factor that justifies the rates requested by Plaintiffs' attorneys is the time and labor required to bring this case to trial and obtain a successful verdict. As the Court well knows, Richard Winfrey, Jr.'s case was filed in 2010. His counsel had to bring his case to the Fifth Circuit twice before the case was brought to trial. And Megan Winfrey's case was also pending for years—she filed her case in 2014 and had to endure two appeals (one relating to Johnson and one relating to Pikett). The time and labor required in bringing this case to trial—through numerous appeals—was extensive. Not many attorneys would or could have dedicated ten years to litigating these cases on a contingency basis before calling it quits at some point along the way.

Similarly, having to spend many years bringing this case to trial resulted in the "preclusion of employment" by Plaintiffs' attorneys, who could have spent their time litigating other cases. There was a serious opportunity cost associated with representation of Plaintiffs. Plaintiffs' attorneys and paralegals in this case devoted over 2,100 hours and tens of thousands of dollars in case, all with the real risk of recovering absolutely nothing. In doing so, Plaintiffs' counsel was precluded from devoting time and resources to other cases. This case was "undesirable" in the sense that it was risky, difficult, and a drain on time and resources. Plaintiffs' attorneys' willingness to take on and navigate the risk of the case is further support for the proposed rates.

Moreover, Plaintiffs' proposed hourly rates are also supported by the hourly rates awarded to them in recent cases. *Hensley*, 461 U.S. at 430 n.3 (listing twelfth factor as "awards in similar cases"); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999) (noting that "evidence of fee awards the attorney has received in similar cases" may be used to establish an hourly rate). The rates that Plaintiffs' attorneys seek here are commensurate with past awards in civil rights cases. *See* Ex. 3 (Wang Decl.); *Awalt*, 2018 WL 2332072, at *2-*3; *Wheatt v. City of East Cleveland*, 2019 WL 4071646, at *12. The rates Ms. Loevy and Ms. Horn are seeking are comparable to the rates that other Loevy & Loevy attorneys have been awarded by courts in other civil rights cases. *See id.*; *Holmes v. Slay*, 2017 WL 994473, at *3 (E.D. Mo. Mar. 15, 2017) ($400 per hour for Loevy attorney who was 2004 law school graduate).[7]

Furthermore, an attorney's actual billing rate for similar litigation is presumptively appropriate for calculating a reasonable hourly rate. 461 U.S. at 430 n.3; *Johnson*, 488 F.2d at 717-19. Though Plaintiffs' attorney work for clients on a contingent-fee basis in most cases, from time to time, the firm has been retained at hourly rates. In 2016, Ms. Wang was retained at an hourly rate of $400 for a civil rights case in Colorado. *See* Ex. A to Wang Declaration (Ex. 3). Paralegal Brian Swift was retained at an hourly rate of $125 in the same case. Ex. A. These hourly rates paid by clients of Loevy & Loevy separately justify the rates sought. They are the same rates claimed in this case, even though a

---

[7] Notably, Ms. Wang was awarded $400 per hour in *Awalt*, which is a case that began in 2011 and ended in 2018. This is evidence that the requested rate of $400 for both herself and Ms. Horn (who have similar years of experience) is reasonable given that the work in this case was performed from 2010-2020, an overlapping time period.

10

significant amount of work—appeals and trial—were completed after 2016. "The Fifth Circuit has found paralegal rates of $75 to $125 per hour reasonable." *Rouse*, 181 F. Supp. 3d at 390 (citing *League of United Latin American Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1235 (5th Cir. 1997); *Firth v. Don McGill of West Houston, Ltd.*, 2006 WL 846377, at *6 (S.D. Tex. Mar. 28, 2006) ($95 to $125 per hour fees for paralegal)).

The *Laffey* Matrix, created by the U.S. Attorney's Office for the District of Columbia as a guideline for reasonable rates in fee-shifting cases, also supports Plaintiffs' claimed hourly rates. "The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees." Ex. 10 (USAO Attorney's Fees Matrix, 2015-2020). The rates Plaintiffs' attorneys are seeking are below the rates set out in the *Laffey* Matrix for attorneys with the same years of experience. *Id.* This is another basis on which to approve the proposed hourly rates.

## II.   The Hours Expended By Plaintiffs' Attorneys Are Reasonable

The total 1,897 hours of attorney time and 203 hours of paralegal time are reasonable and should be approved. The hours are documented on the timesheets attached to the declarations submitted as Exhibits 1-6.

It is important to make clear at the outset a couple of points relating to Plaintiffs' billing records. First, attorneys are required to exercise billing judgment in deciding what hours to submit to the Court in a fee petition, *Rouse*, 181 F. Supp. 3d at 388, and Plaintiffs have done so here. The submitted timesheets include only the core activities necessary to effectively prosecute the case, and not extraneous hours that would have

been "excessive, redundant, or otherwise unnecessary" to the result in this case. *Hensley*, 461 U.S. at 434. For instance, Plaintiffs have excluded time that their attorneys devoted exclusively to claims against Pikett (with whom they settled), such as: discovery and motions related only to Pikett, phone calls with Pikett's attorney, and Pikett's interlocutory appeal relating to Megan Winfrey.[8]

Moreover, Loevy & Loevy staffed this case leanly. Ms. Wang was the attorney-in-charge who handled nearly every aspect of the case. *See* Ex. 3. Ms. Horn provided advice and strategic guidance and took lead of the case when Ms. Wang went on maternity leave. Ms. Loevy worked on the first round of summary judgment briefing and first appeal to the Fifth Circuit. And then Ms. Wang and Ms. Horn worked together extensively during trial. *See* Ex. 2, Ex. 3. At various times, other attorneys and paralegals provided guidance or assistance, or were involved for short periods of time, but Plaintiffs, in exercising their billing judgment, are not seeking compensation for their hours.[9]

Furthermore, Defendant Johnson's litigation style forced a great expenditure of effort by Plaintiffs. His strategy has been to fight Plaintiffs at every turn (including now, another appeal to the Fifth Circuit), repeatedly raise qualified immunity and other arguments that have no legal basis or have already been decided conclusively in this case,

---

[8] The Supreme Court has instructed that where claims for relief involve common facts, the Court assessing attorney's fees under Section 1988 cannot attempt to subdivide the fee award among discrete claims. *Hensley*, 461 U.S. at 435.

[9] Such other attorneys and paralegals include Arthur Loevy, Jon Loevy, Mike Kanovitz, Rachel Steinback, David Owens, John Hazinski, Megan Pierce, Melinda Ek, and Italia Patti. As the Court can see from the paralegal timesheets (Exs. 4, 5, 6), Plaintiffs are not seeking compensation for paralegal time spent prior to summary judgment briefing in 2014.

12

and refuse to engage in settlement discussions even though former defendant Pikett settled long ago. These factors weigh in favor of the reasonableness of Plaintiffs' hours. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1538 (2020) (Alito, J., dissenting) ("Relief would be particularly appropriate here because the City's litigation strategy caused petitioners to incur what are surely very substantial attorney's fees in challenging the constitutionality of a City ordinance that the City went to great lengths to defend.").

Another factor in the reasonableness of Plaintiffs' hours is that this case began 10 years ago. There were two appeals involving Johnson in Richard Winfrey, Jr.'s case and one appeal involving Johnson in Megan Winfrey's case. There were two rounds of summary judgment briefing. This case also involved thousands of pages of documents given that both Richard Winfrey, Jr. and Megan Winfrey were criminally tried in separate trials (and their father, Richard Winfrey, Sr. was also separately tried and many of the same witnesses testified). There was an extensive number of documents covering the police investigation and trials that Plaintiffs' counsel had to review.

In sum, Plaintiffs are simply requesting the lodestar, all of which is supported by the evidence set out above and attached as exhibits hereto. This has been the approach of Loevy & Loevy in all cases that involve litigation of a fee petition, and it is the reason courts have repeatedly found Loevy & Loevy's fee requests to be reasonable, approving them at extremely high percentages of the fees sought. *See, e.g.*, *Wheatt*, 2019 WL 4071646, at *13 (awarding $522,468.50 to Loevy & Loevy on a request of $532,987.50); *Awalt*, 2018 WL 2332072 (awarding $3,172,650 in attorneys' fees after subtracting only

13

$14,525 from Plaintiffs' request); *Fox v. Barnes*, 2013 WL 4401802, at *4 (award of $1,234,180, the lodestar figure and the amount requested); *Jimenez v. City of Chicago*, 2012 WL 5512266, at *7 (N.D. Ill. Nov. 14, 2012) (awarding $1,740,899.20 on request of $1,865,881); *Warfield v. City of Chicago*, 733 F. Supp. 2d 950 (N.D. Ill. 2010) (approving $624,387 in fees in a case with a verdict barely a third of that amount); *Garcia v. City of Chicago*, 2003 WL 22175620 (striking a total of 2.5 hours from Loevy & Loevy's 2,000+ hour fee petition) (N.D. Ill. Sept. 19, 2003). In sum, Plaintiffs are seeking the following, as documented in Exhibits 1-6:

| Attorney/Paralegal | Hours | Rate | Lodestar |
|---|---|---|---|
| Debra Loevy | 276.5 | $450 | $124,425.00 |
| Gayle Horn | 549.0 | $400 | $219,600.00 |
| Elizabeth Wang | 1071.50 | $400 | $428,600.00 |
| Brian Swift (paralegal) | 27.25 | $125 | $3,406.25 |
| Lauren Lebata (paralegal) | 56.50 | $125 | $7,062.50 |
| Andrew Garden (paralegal) | 119.25 | $125 | $14,906.25 |
| **TOTAL** | **2,100** | | **$798,000.00** |

### III.   Costs and Expenses Taxable under 28 U.S.C. § 1920 and 42 U.S.C. § 1988

Lastly, in their effort to prevail for Plaintiffs, Plaintiffs' counsel spent $61,197.64 in costs and expenses out of pocket. Costs recoverable under Section 1920 total $25,417.42, and litigation expenses recoverable under Section 1988 total $35,780.22. Ex. 7; Ex. 8; Exs. 9a-9k. Plaintiff's attorney-in-charge has reviewed this data and determined that they were reasonably expended in this case. Ex. 3 ¶ 14. "Reasonable litigation

14

expenses are ordinarily included in an award of statutory attorneys' fees." *Rouse*, 181 F. Supp. 3d at 392. "Accordingly, in addition to taxable court costs listed under 28 U.S.C. § 1920, costs for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment litigation expenses are also recoverable under the FLSA as part of an attorney's fee award." *Id.* Such expenses have been found reasonable and recoverable under Section 1988 because they are part of the costs normally charged to a fee-paying client. *Assoc. Builders & Contractors of La., Inc. v. The Orleans Parish Sch. Bd.*, 919 F.3d 374, 380 (5th Cir. 1990); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395-96 (5th Cir. 2003) (discussing cases and noting that it had "affirmed awards of out-of-pocket travel expenses as components of attorney's fee recoveries under § 1988"). Plaintiffs' counsel are based out of town. They incurred reasonable travel expenses in order to furnish effective and competent representation to Plaintiffs. Much as Plaintiffs' counsel did with their fees, they exercised judgment, and are not asking for every cost expended—only those at the core of their case.[10]

## CONCLUSION

In sum, Plaintiffs respectfully request $798,000.00 in attorney's fees and costs and expenses under Sections 1920 and 1988 in the amount of $61,197.64.

Respectfully submitted,
/s/ Elizabeth Wang
*Attorney-in-Charge for Plaintiffs*

---

[10] For instance, Plaintiffs have excluded all meals from their request for expenses under Section 1988.

15

| | |
|---|---|
| Elizabeth Wang<br>LOEVY & LOEVY<br>2060 Broadway, Ste. 460<br>Boulder, CO 80302<br>O: 720.328.5642<br>elizabethw@loevy.com | Gayle Horn<br>LOEVY & LOEVY<br>311 N. Aberdeen St.<br>Chicago, IL 60607<br>O: 312.243.5900<br>gayle@loevy.com |

## **CERTIFICATE OF SERVICE**

I, Elizabeth Wang, an attorney, hereby certify that I filed the foregoing via CM/ECF, on October 1, 2020, thereby causing an electronic copy to be delivered to all counsel of record.

Respectfully submitted,
/s/ Elizabeth Wang
*Attorney-in-Charge for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD WINFREY, JR. and MEGAN WINFREY, | ) ) ) |
| Plaintiff, | ) No. 4:10-CV-1896 ) |
| vs. | ) Judge George Hanks, Jr. ) |
| LENARD JOHNSON, | ) ) |
| Defendant. | ) |

## **EXHIBIT LIST**

Exhibit 1:    Debra Loevy declaration and timesheet

Exhibit 2:    Gayle Horn declaration and timesheet

Exhibit 3:    Elizabeth Wang declaration and timesheet

Exhibit 4:    Lauren Lebata declaration and timesheet

Exhibit 5:    Brian Swift declaration and timesheet

Exhibit 6:    Andrew Garden declaration and timesheet

Exhibit 7:    Bill of Costs form

Exhibit 8:    Spreadsheet of costs and expenses

Exhibit 9a:   2010 receipts/invoices

Exhibit 9b:   2011-2012 receipts/invoices

Exhibit 9c:   2013 receipts/invoices, part 1

Exhibit 9d:   2013 receipts/invoices, part 2

Exhibit 9e:   2013 receipts/invoices, part 3

Exhibit 9f:     2014 receipts/invoices

Exhibit 9g:    2015-2017 receipts/invoices

Exhibit 9h:    2018 receipts/invoices

Exhibit 9i:     2019 receipts/invoices

Exhibit 9j:     2020 receipts/invoices

Exhibit 9k:    Andy Thayer declaration with mastercard data

Exhibit 10:    Laffey Matrix, 2015-2020

Exhibit 11:    Emails between Norman Giles and Elizabeth Wang