IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD WINFREY, JR. and MEGAN WINFREY | ) ) ) |
| Plaintiff, | ) No. 4:10-CV-1896 ) |
| vs. | ) Judge George Hanks, Jr. ) |
| LENARD JOHNSON, | ) ) |
| Defendant. | ) |

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR AMENDED MOTION FOR
ATTORNEYS' FEES AND COSTS**

Plaintiffs Richard Winfrey, Jr. and Megan Winfrey, through counsel, hereby

respectfully file this reply in support of their amended motion for attorneys' fees and

costs:

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

Gayle Horn
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
O: 312.243.5900
gayle@loevy.com

## TABLE OF CONTENTS

Introduction ................................................................................................. 1

Argument ..................................................................................................... 2

I.    The Claims Against All Defendants Revolved Around a Common Factual Core and Involved Related Legal Theories ................................................. 2

    A.    All of Plaintiffs' Claims Share a Common Factual Core and Revolve Around Related Legal Theories.................................................... 3

    B.    Defendants' Conclusory Suggestion That the Claims Are Not Related Is Untenable................................................................................. 7

        1.  Fort Bend County, Pikett and Sheriff Wright ..................................... 8

        2.  Huff and Duff.................................................................................. 9

        3.  Christopher Hammond and the Browns............................................. 10

        4.  Sheriff Rogers and San Jacinto County ............................................. 11

    C.    Defendant Johnson's Citation to *Von Clark* is Not Persuasive ............... 13

II.    Plaintiffs Unquestionably Achieved a High Level of Success ........................ 15

III.    Counsel's Entries are Neither Vague Nor Excessive........................................ 19

    A.    Counsel's Time Entries are Not Vague .................................................. 19

    B.    Counsel's Hours Are Not Excessive ...................................................... 20

IV.    Plaintiffs Have Not Charged For Purely Clerical Work ................................... 22

V.    Plaintiffs Have Exercised Billing Judgment .................................................. 25

VI.    Plaintiffs Have Asked for Reasonable Costs ................................................. 28

    A.    Private Process Server .......................................................................... 28

    B.    Depositions ......................................................................................... 29

      C.     Travel/Hotel Expenses..................................................................... 32

      D.     No Across-the-Board Reduction is Warranted.......................................... 33

VII.   Requested Fees and Costs..................................................................... 33

**Introduction**

Defendant Johnson has requested a substantial reduction in the fees and costs to be taxed to him, largely by contesting Plaintiffs' success in this litigation. Plaintiffs received a one million dollar verdict for their wrongful arrest and detention against Defendant Johnson, making Johnson's argument a hard, if not insurmountable hill to climb. The Plaintiffs' degree of success is the most important factor in evaluating an attorney-fee petition and there is no legitimate dispute that Plaintiffs were highly successful.

Rather than address that verdict, the Defendant argues—in essence—that Plaintiffs were not successful against *other* Defendants—dismissed or settled—and that that supposed failure should reduce Plaintiffs' attorneys' fees. But that argument fails too. Defendant Johnson has sought to lump as many litigation tasks and costs as possible under the umbrella of "dismissed claims or Defendants," including depositions of the dismissed Defendants and the cost of *his own* deposition, even though each task would have been done regardless because all of the dismissed Defendants' and attendant claims revolve around the same factual core—the police investigation into the murder of Murray Burr—and related legal theories—the violation of Plaintiffs' constitutional rights.

This erroneous argument infects the remainder of the Defendant's objections. For example, while Defendant Johnson claims certain time entries are "vague," he is not contesting the adequacy of the description as a general matter, but instead because it does parse out what portion of the attorneys' time spent deposing a witness or responding to a jointly-filed motion for summary judgment was spent expressly discussing Defendant Johnson. So too for costs: Defendant Johnson is seeking to reduce Plaintiffs' costs by 8/9

1

because Plaintiffs prevailed against only one Defendant. Johnson cites no legal support for such a reduction nor could he: Because of the factual overlap and legal commonalities, the costs would have been incurred regardless. As such, and for all the reasons stated below, Plaintiffs should be awarded their amended fees and costs.

## Argument

Plaintiffs respond to each of Defendant Johnson's legal arguments below. In addition, and to the extent that the Defendant is challenging specific time or cost entries on Plaintiffs' spreadsheets, Plaintiff has responded to each of those objections in the attached Exhibits 1-6. For ease and simplicity, Plaintiffs have responded to Docket 351-1, which includes all of the attorneys' fees that Defendant Johnson has contested, and Docket 351-8 (Section 1920 costs) and 351-9 (Section 1988 costs), which includes all of the costs that Defendant Johnson has contested.[1] Where Plaintiffs have agreed to either remove or reduce the fees or costs, Plaintiffs have highlighted that row in green.

## I.    The Claims Against All Defendants Revolved Around a Common Factual Core and Involved Related Legal Theories

Defendant Johnson's primary argument is that Plaintiffs' counsel should not be compensated for time spent litigating unsuccessful claims that were either dismissed by the Court or settled by the parties. This argument suffers from a fundamental mischaracterization of the result in this case. Put simply, Plaintiffs won. After multiple

---

[1] All of the docket entries titled "Doc." refer to Docket 10-1896 (Richard Winfrey, Jr.). Where Plaintiffs are citing to the docket in Megan Winfrey's case, No. 14-448, they will so indicate. The cases were consolidated pretrial and all such filings were done under Mr. Winfrey, Jr.'s case, No. 10-1896.

appeals and a trial, they achieved everything they legitimately set out to accomplish in this litigation. That they may have lost certain legal theories or failed to prevail against every Defendant is beside the point. They obtained a very successful verdict, compensating them fully for their injuries. Under the law, this is sufficient to justify an award of the full amount of their attorneys' fees.

Another problem with Defendants' argument is that all of Plaintiffs' claims—against Johnson and the dismissed/settled Defendants—revolve around a common factual core and related legal theories. The Defendant's say-so that they do not has no merit.

### A. All of Plaintiffs' Claims Share a Common Factual Core and Revolve Around Related Legal Theories

"[W]hen there are both successful and unsuccessful claims, 'the judge should consider whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded." *Howell v. Town of Ball*, No. 1:12-CV-00951, 2018 WL 580055 at *5-6 (W.D. La. Jan. 26, 2018) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 568-69 (1986)); *see also Hudson v. Bd of Regents of Texas S.U.*, No. 4:05-CV-03297, 2009 WL 6496547, at *3 (S.D. Tex. March 10, 2009) (same); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 822 (S.D. Tex. 2008) ("When the successful and unsuccessful claims involve a 'common core of facts' or 'are based on related legal theories' then attorneys' fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success . . .") (internal quotes omitted).

In particular, courts evaluate whether the plaintiff's claims for relief "involve a common core of facts or related legal theories . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1985). When that occurs, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id*. As a result, "the district court should focus on the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation." *Id*.; *see also City of Riverside*, 477 U.S. at 568-69 (where unsuccessful and successful claims are related, courts look at the level of success achieved); *Coleman v. Houston Indep. Schl. Dist.*, No. 98-20692, 1999 WL 1131554 at *5 (5th Cir. Nov. 8, 1999) ("[T]here is ample authority for the proposition that a partially prevailing party may recover all reasonably incurred attorney fees, even though the party did not prevail on all claims, as to all defendants, or as to all issues in a matter.").

Here, the claims that were dismissed by the court or settled by the parties contained a common factual core and arose out of related, if not identical legal theories. To that end, Plaintiffs alleged that each of the Defendants was liable for their wrongful arrests and prosecutions for the murder of Murray Burr. Doc. 1 (Compl.) at 11-20; Doc. 1, No. 14-448 (Compl.) at 11-17. Although Plaintiff raised a number of different constitutional theories for why their arrests and detentions were unconstitutional, all of the claims attacked the same underlying single, law enforcement investigation into Burr's homicide. *Id*.; *see also Serafine v. Branaman*, A-11-CV-1018-LY, 2016 WL 6069184, at *6-7 (W.D. Tex. Oct. 17, 2016) ("[W]hile Serafine alleged several different theories of why the enforcement of the Act was unconstitutional, all the claims attacked the

4

constitutionality of the Act and sought the same relief . . . ."); *Hudson*, 2009 WL 6496547 at *3 ("The claims in the instant case also rose out of a series of connected events surrounding Plaintiffs' protests and subsequent disciplinary proceedings at TSU. As such, the Court does not find that a further reduction of the hours or Plaintiffs' counsel is necessary to account for time spent on the state law claims."); *see also Hernandez v. Hill Country Tel. Co-Op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988); *Garcia v. City of Harlingen*, No. CV B-06-134, 2010 WL 11575453 at *3 (S.D. Tex. April 9, 2010).

Indeed, in this case there was one police investigation that led to Plaintiffs' arrests and that included: scent lineups and a drop trail; interviewing witnesses, including Ms. Winfrey's teachers (Deborah Gladden), Ms. Winfrey's boyfriends (Christopher Hammond, Jason King), David Campbell and Tracy and Mike Brown; interrogating the Plaintiffs and their father; applying for and executing search warrants (for hair, for alleged weapons in a hollow); sending forensic evidence, including hair and blood, to be tested; and arresting Plaintiffs. Johnson and all of the dismissed individual Defendants participated in that investigation in one or more capacities. To that end, Huff and Duff assisted with the scent lineups and drop trail; interviewed Plaintiffs and Chris Hammond; and participated in at least one meeting with the District Attorney during which Plaintiffs' arrests were discussed. Doc. 287 (Huff Trial Test.) at 5, 12-15, 52, 54-55; Doc. 339 (Duff Trial Test.) at 50, 58, 65-66. For his part, Fort Bend County Deputy Keith Pikett conducted the scent lineups and drop trail. Doc. 331 (Pikett Trial Test.) at 171-172. San Jacinto County Sheriff Lacy Rogers was present for those scent lineups and drop trail; applied for and executed search warrants; interviewed Plaintiffs; and interviewed

5

Campbell along with Defendant Johnson. Doc. 334 (Rogers Trial Test.) at 140, 146, 196, 199, 226-227. And finally Johnson interviewed Plaintiffs Richard Winfrey, Jr. and Megan Winfrey; applied for and executed search warrants; interviewed Campbell with Sheriff Rogers; submitted forensic evidence to be tested; and authored the arrest-warrant affidavits. Doc. 285 (Johnson Trial Test.) at 25, 39, 45, 47, 61. All of the Defendants—dismissed Defendants Huff, Duff, Pikett and Rogers—and Defendant Johnson operated in conjunction with one another, toward a common goal, and kept each other abreast of the progress each had made. Doc. 284 (Johnson Trial Test.) at 113; Doc. 287 (Huff Trial Test.) at 9; Doc. 334 (Rogers Trial Test.) at 145. In short, together they all conducted the investigation into the murder of Murray Burr.

For that reason, Plaintiffs brought virtually identical claims against each of the Defendants: for violations of their constitutional rights, including for the violation of due process and the failure to intervene, and state law claims of malicious prosecution. Doc. 1 (Compl.); Doc. 1, No. 14-448 (Compl.). Lest there be any doubt as to whether the claims and facts were related, Plaintiffs also brought conspiracy claims against each of the Defendants. *Id*. Granted, Plaintiffs did not know prior to initiating the litigation exactly who committed what misconduct, but Plaintiffs' counsel were ethically bound to protect their clients by casting the net as wide as could be justified to ensure that they were not leaving any stone unturned.

Given the foregoing, it is impossible to separate out the unsuccessful claims and dismissed Defendants for purposes of a fee petition. *See e.g, Rosenstein v. City of Dallas*, 876 F.2d 392, 398-99 (5th Cir. 1989), *opinion reinstated in part*, 901 F.2d 61 (5th Cir.

1990) (finding that the § 1983 and slander claims "share a common core of facts and the damages theories for both claims are identical"); *Sabre Indus., Inc. v. Module X Sols. LLC*, No. 15-2501, 2019 WL 4794103, at *1 (W.D. La. Sept. 30, 2019) (courts "need not segregate fees when the facts and issues are so closely interwoven that they cannot be separated") (internal quotation omitted); *see also Garcia*, 2010 WL 11575453, at *3; *Hudson*, 2009 WL 6496547 at *3. As a result, "Plaintiffs may claim all hours necessary to litigate" the claims in this case. *Stevenson v. LaSalle Corrections Transport, LLC*, No. 3:13-CV-2105-N, 2015 WL 11120525, at *3 (N.D. Tex. April 21, 2015) ("Because the claims against the multiple defendants in this matter shared a common core of facts and related legal theories, Plaintiffs may claim all hours necessary to litigate those issues.").

## B.  Defendants' Conclusory Suggestion That the Claims Are Not Related Is Untenable

Nothing in the Defendant's brief warrants a finding to the contrary. In large measure, Defendant Johnson's argument boils down to a self-serving statement that the claims against the other Defendants do not share a factual core or legal basis. But that bare statement is neither sufficient to set forth an argument nor can it defeat the facts of this case and the legal claims that were actually litigated. *See United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007) (failure to develop argument waives it).

### 1.  Fort Bend County, Pikett and Sheriff Wright[2]

With respect to Pikett, Fort Bend County and Sheriff Wright, Defendant Johnson stated, without more, that the claims against these Defendants share no facts or law with the successful claim against Johnson. As demonstrated above, however, that argument fails. One of the bases for Plaintiffs' arrests—and which was discussed at length in Johnson's arrest-warrant affidavits—was the scent evidence generated by Pikett, including the scent drop trail. Ex. 6 (Arrest-Warrant Affidavits). Evidence relating to the scent lineups and the drop trail was presented at trial and discussed at length in the parties' opening and closing arguments. Doc. 336 (Opening Arg.) at 191-192, 198-199, 203-204; Doc. 285 (Johnson Trial Test.) at 25-26, 38-42.. In short, there was significant factual overlap between the claims against Pikett and the claim that was tried against Johnson.

Moreover, because of that overlap, the claims against Pikett and Johnson were highly related. Pikett was potentially liable because he "cued his dogs during the scent lineups" and drop trail, and that drop trail—and Defendant Johnson's misrepresentation of it—became part of the Fourth Amendment claim presented to the jury. *See, e.g.,*

---

[2] Sheriff Wright was sued only in his official capacity. There was little to no work done on Plaintiffs' claims against Fort Bend County and Sheriff Wright that was separate from the work done on Plaintiffs' claims against Pikett. That is because the claims against Fort Bend County and Wright were dismissed in both Richard Winfrey, Jr.'s and Megan Winfrey's cases at the first motion for summary judgment and they were not reinstated on appeal. *See Winfrey v. San Jacinto County*, 481 Fed. App'x 969, 981-82 (5th Cir. 2012) ("*Winfrey I*"). App'x at 981-82; *see also Winfrey v. Johnson*, 766 Fed. App'x 66, 69 (5th Cir. 2019) ("*Winfrey III*"). Regardless, "[t]o the extent that the County's liability in this case is based entirely on [Pikett's] actions, the Plaintiffs' claims against the County [and Sheriff in his official capacity] rest on a factual basis identical to the one on which their claims against [Pikett] rested." *Brady v. Fort Bend County*, 145 F.3d 691, 716-17 (5th Cir. 1998).

*Winfrey v. San Jacinto County*, 481 Fed. App'x 969, at 977 (5th Cir. 2012) ("*Winfrey I*");

Doc. 265 (Jury Charge)*; see also Howell*, 2018 WL 580085, at *6 (finding that plaintiff's

unsuccessful claims for conspiracy, intentional infliction of emotional distress, due

process and under the Police Officer's Bill of Rights "were neither discrete nor unrelated

to Howell's ultimately successful claims for First Amendment retaliation and under the

FCA").

### 2. **Huff and Duff**

Like Pikett, the claims against Huff and Duff revolved around the same factual

core (the police investigation), related legal claims (violation of Plaintiffs' constitutional

rights) and even the same damages (wrongful detention) as Defendant Johnson. As noted

above, Huff and Duff were present for Pikett's scent lineup and drop trail as well as the

interview of Plaintiffs and Christopher Hammond; indeed, both testified at Plaintiffs' trial

to the same. Doc. 287 (Huff Trial Test.) at 5, 12-15, 52, 54-55; Doc. 339 (Duff Trial

Test.) at 50, 58, 65-66.. It is therefore hard to understand how the claims against Huff and

Duff could be severable from the claim against Johnson. *See Howell*, 2018 WL 580085,

at *6; *see also Garcia*, 2010 WL 11575453, at *3; *Hudson*, 2009 WL 6496547 at *3.

Moreover, it is worth noting that Huff and Duff were dismissed in Plaintiff

Richard Winfrey, Jr.'s case after they filed for summary judgment in 2010, and were

never reinstated thereafter. *See* Doc. 47 (Mot. for SJ); Doc. 58 (Order on SJ dated

7/9/11). And in Plaintiff Megan Winfrey's case, Huff and Duff were never even sued as

Defendants. *See* Doc. 1, No. 14-448 (Compl.). As a result, most of the hours Plaintiffs'

counsel devoted to Huff and Duff that Defendant Johnson objects to because "Huff and

Duff are excluded parties" are not hours dedicated to developing any claim against Huff or Duff, but instead to prosecuting the case against Defendant Johnson in which Huff and Duff were witnesses.[3] Defendant Johnson cites no support for the notion that Plaintiffs cannot recover for time spent developing witness testimony because there is no such support. Plaintiffs' counsel is entitled to reasonable hours expended reviewing police reports generated by Huff and Duff, preparing for and deposing Huff and Duff, and preparing for and taking their trial testimony.

### 3.  Christopher Hammond and the Browns

In addition, although this makes up a small portion of the hours requested, Defendant Johnson is seeking to exclude the hours Plaintiffs' counsel spent developing evidence of alternative perpetrators—specifically, relating to Christopher Hammond and the Browns—as somehow inapplicable to the successful claim against Defendant Johnson. *See* Doc. 351-4 (identifying 29 hours as attributable to "alternative offenders" litigation). Of course, there was no "claim" that any Defendant failed to pursue these leads nor is there a "claim" against these individuals. Instead, these names arose as witnesses in the police investigation, which was the subject of the lawsuit and which led to the arrest-warrant affidavits at issue in the trial. The Defendant's attempt to silo away all evidence of the police investigation that was not expressly mentioned in the four corners of Defendant Johnson's arrest-warrant affidavits is unavailing. Plaintiffs were

---

[3] For example, the Defendant is seeking to exclude as attributable to claims against Huff and Duff litigation tasks that occurred in 2013, 2015, 2019 and 2020—well after Huff and Duff were dismissed as Defendants. *See* Doc. 351-3.

well within reason to create evidence about the police investigation generally, including about Defendant Johnson's knowledge but disregard of alternative suspects. Such evidence can be demonstrative of Defendant Johnson's state of mind. *See Buchanek v. City of Victoria*, No. V-08-08, 2010 WL 1268069, at *8-10 (S.D. Tex. March 24, 2010) (finding that showing that police officer Eyre made misstatements to mislead the judge "is bolstered by the evidence that another officer told Eyre, before Eyre submitted the probable cause affidavits at issue to the magistrate, that he thought another person should be looked at as a suspect in the case").

As a result of the foregoing, there is neither a factual or legal basis to exclude the hours Plaintiffs' counsel spent developing evidence relating to Christopher Hammond and the Browns. *See Lewallen v. City of Beaumont*, No. 1:05-CV-733TH, 2009 WL 2175637, at *8 (E.D. Tex. July 20, 2009) (explaining that with respect to issues that were not presented to the court, the operative question is "whether the time spent on the issue was reasonable in light of the overall claims being pursued"). That is particularly so because evidence about Hammond was part of the trial; indeed, it was Hammond's scent that was inadvertently used in the drop trail, and Defendant Johnson's misstatement that the scent was Plaintiff Richard Winfrey's in his arrest-warrant affidavit was part of the Fourth Amendment claim submitted to the jury.

### 4. Sheriff Rogers and San Jacinto County

Johnson also seeks to exclude hours that he alleges are attributable to the claims against Sheriff Rogers and San Jacinto County. This includes: responding to joint motions and briefs filed by Defendant Johnson and Rogers; deposing Sheriff Rogers;

conducting pretrial discovery, at which time both Rogers and Johnson were Defendants;[4] and taking depositions. This argument does not pass the laugh test.

The claims against Rogers were virtually identical to those against Defendant Johnson. That is because they revolved around the same police investigation, which both Rogers and Johnson participated in as officers for San Jacinto County—Rogers as the Sheriff and Johnson as his Deputy. That investigation included the interview of Campbell, which Rogers was also present for and participated in, and which formed the basis for Plaintiffs' claim against Johnson. As a result, Rogers testified at trial not only to the scent evidence, but also about his and Johnson's interview of Campbell.

Lest there be any doubt that the claims against Rogers shared a factual core and were based on related legal theories, in their motions to dismiss and for summary judgment, Defendant Johnson and Rogers filed jointly, and their actions and culpability were often intertwined in a single argument. Doc. 45 (Mot. SJ) at ¶¶ 30-42; Doc. 125, (Mot. Dismiss) at 1-5; Doc. 136 (Mot. SJ) at 19-45; Doc. 14, No. 14-448 (Mot. Dismiss) at 1-3; Doc. 25, No. 14-448 (Mot. Dismiss) at 1-5; Doc. 62, No. 14-448 (Mot. SJ) at 25-65; *In re Ridgeway*, No. 16-10643, 2018 WL 3630156, at *15 (Bankr. E.D. La. July 27, 2018) ("Perhaps even more persuasive is that the debtor's own appellate counsel testified . . . that the debtor's defense of Stryker's claims and Stone's counterclaim against Stryker involved a case of shared facts.")

---

[4] This also includes reviewing disclosures and discovery jointly filed by then-Defendant Rogers and Defendant Johnson.

Under *Hensley* and *City of Riverside*, counsel's hours spent litigating Plaintiffs' claims against Rogers are therefore compensable. *Hensley*, 461 U.S. at 435; *City of Riverside*, 477 U.S. at 568-69.

To be clear, Defendants do not, and cannot dispute, that all of the discovery related to these individuals and their roles would have been undertaken even had they not been Defendants. They were witnesses regardless. This means that all of the investigation of their actions and their depositions would have been necessary even if they were never named as Defendants. For that reason, there is no justification to cut Plaintiffs' fees for undertaking this work.

### C. Defendant Johnson's Citation to *Von Clark* is Not Persuasive

Nothing about Defendant Johnson's citation to *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) changes the foregoing analysis. *Clark* involved an appeal of a fee petition decision. *Clark* contained no analysis of whether the unsuccessful claims had a common factual core or related legal theory. Instead, it discussed whether there was a way to distinguish from the "summaries of their timesheets," which is all that counsel submitted, what hours were attributable to the successful versus unsuccessful claims. *Id*. Finding that the documentation was insufficient, *Clark* reduced the hours accordingly. *Id*.

The instant case is distinguishable for two reasons. First, as demonstrated above, each of the claims against the Defendants—dismissed, settled and successful—are interrelated because of their virtually identical factual foundation and legal theory. In that

way, there was neither a need nor an ability to distinguish what hours were attributable to the successful versus unsuccessful claims.[5]

Second, Plaintiffs' counsel has submitted their detailed timesheets—not just summaries of those timesheets. These timesheets provide adequate proof and descriptions of the hours reasonably spent on this litigation. *See Wegner v. Stand. Ins. Co.*, 129 F.3d 814, 822-23 (5th Cir. 1997) (explaining that documentation need not be overly detailed but merely sufficient to conduct a "meaningful review"); *see also Tyler v. Cedar Hill Indep. Sch. Dist.*, 433 Fed. App'x 265, 267 (5th Cir. 2011); *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985).

*        *        *        *        *

Finally, even if Defendant Johnson were somehow correct that the claims against the dismissed or settled Defendants are not related and do not share a factual basis, which he is not, his interpretation of what litigation tasks can be attributed to Defendant Johnson and the successful claim against him is unduly narrow and self-serving. For example, although Defendant Johnson filed combined motions for summary judgment with San Jacinto County and Sheriff Rogers in both Plaintiffs' cases, Defendant Johnson argues that any time Plaintiffs spent responding to these combined motions should be reduced because it cannot be solely attributable to Defendant Johnson. Similarly myopic, Defendant Johnson argues that Plaintiffs' counsel should not be compensated for the

---

[5] For example, there would be no way to distinguish which hours were spent responding to Defendant Johnson's motions for summary judgment since it was filed together with and made the same arguments as then-Defendant Rogers' motions for summary judgment. *See* Doc. 45, (Mot. SJ) at ¶¶ 30-42; Doc. 136 (Mot. SJ) at 19-45; Doc. 62, No. 14-448 (Mot. SJ) at 25-65.

hours spent deposing Sheriff Rogers, even though: (1) Rogers was present for and participated in the interview of Campbell and testified at trial to the same and (2) Rogers' deposition was used at trial to refresh his recollection. Doc. 334 (Rogers Trial Test.) at 169-170, 199, 230-231. Defendant Johnson cannot avoid the import of Section 1988 by simply redefining (and then unduly narrowing) the litigation against him; or suggesting that discovery about the police investigation that led to the Plaintiffs' arrest is somehow outside the scope of the case against Johnson.

## II.  Plaintiffs Unquestionably Achieved a High Level of Success

Given the foregoing, the operative question in this fee-petition litigation is not whether any particular time entry can be attributed to any particular Defendant and/or claim, but instead whether the hours expended were reasonable in light of Plaintiffs' overall success. *See Hensley*, 461 U.S. at 435. Under established principles, the lodestar amount, derived by multiplying the reasonable hours expended by a reasonable hourly rate,[6] is the presumptively appropriate measure of the fee award. *Hensley*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 897 (1984). The Supreme Court holds that when litigation of a section 1983 case leads to "excellent results," the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.* Here, there is no doubt that

---

[6] Notably, Defendant Johnson is not challenging any of the requested hourly rates.

Plaintiffs achieved "excellent results" and that the lodestar (as modified herein) is the appropriate award.

Defendant Johnson's suggestion otherwise has no merit. Defendant Johnson argues that this Court should enter a 50% reduction in the lodestar because of Plaintiffs' alleged limited success. The crux of Defendant's argument is that Plaintiff sued "15 defendants for 13 claims" and only succeeded against one Defendant on one claim; therefore, according to the Defendant's math, Plaintiffs were not successful. That argument has no merit.

Defendant cites no support for this proposition other than *Farrar v. Hobby*, 506 U.S. 103 (1992), but *Farrar* is distinguishable. In *Farrar*, the plaintiffs sued a number of defendants alleging the deprivation of liberty and property without due process. *Id*. at 106. At trial, the jury found that one of the defendants deprived one of the plaintiffs of his "civil rights," but the plaintiff was awarded only nominal damages. *Id*. The Supreme Court held that the plaintiff was a "prevailing party" under Section 1988, but that he was not entitled to attorney's fees because he recovered only nominal damages. *Id*. at 112-15.

This case stands in stark contrast to *Farrar*. Unlike *Farrar*, Plaintiffs were awarded one million dollars in damages—far from anything nominal or *de minimis*.[7] Moreover, even *Farrar* does not suggest that the court should add up the number of defendants and the number of claims to determine a plaintiff's degree of success. Instead,

---

[7] Additionally, Plaintiffs settled with Fort Bend County and Defendant Pikett prior to their trials; Plaintiff Richard Winfrey, Jr. settled for $550,000 while Plaintiff Megan Winfrey settled for $1,000,000. Docs. 218-4, 218-5 (No. 10-1896).

the calculus is whether the plaintiff was compensated for their injury. *Id* at 115. That criteria is satisfied here: Plaintiffs were awarded one million dollars for their injuries.

Plaintiffs were able to achieve that result because of the skill, expertise and dedication of their attorneys who litigated this case for more than 10 years. The hours that Plaintiffs are requesting—which reflect that more-than-a-decade's worth of litigation, and include five trips to the Court of Appeals—are reasonable. *See Winfrey I*; *Winfrey v. Pikett*, 872 F.3d 640 (5th Cir. 2017) ("*Winfrey II*"); *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018) ("*Winfrey III*"); *Winfrey v. Johnson*, 766 Fed. App'x 66 (5th Cir. 2019) ("*Winfrey IV*"); *Winfrey v. San Jacinto County*, No. 20-20477, 2021 WL 5286570 (5th Cir. 2021) ("*Winfrey V*"). Moreover, as described more fully below, Plaintiffs' counsel has exercised billing judgment in requesting fees—removing certain hours that were spent responding to the Defendants' initial summary judgment motions; only asking for fees for three attorneys when at least six worked on the case; and eliminating any time expressly dedicated to the settlement with Pikett. *See* Section V *infra*.

Additionally, any complaints about the number of hours expended to prosecute this case are particular hollow because at least some of those hours are of the Defendant's own making. The Defendant has vigorously contested this litigation, filing multiple motions for summary judgment, asking for appellate rehearing and petitioning for cert on those occasions. For example, the Defendant repeatedly argued that qualified immunity precluded liability—notwithstanding the fact that the Fifth Circuit repeatedly rejected the same argument. *See, e.g.*, Doc. 45 at ¶¶ 27-29 (No. 10-1896); Doc. 136 at 39-45 (No. 10-1896); Doc. 217 (No. 10-1896), Doc. 271 at 7-12 (No. 10-1896); Doc. 62 at 41-45 (No.

14-448); *Winfrey I*, 481 Fed. App'x at 977-81; *Winfrey III*, 901 F.3d at 487-88, 493-96; *Winfrey IV*, 766 Fed. App'x at 70-71. While it is Defendant's prerogative to defend his case aggressively, he cannot cry foul when the Plaintiffs thereafter seek fees for responding to this approach. *See Seina v. L. Off. Of Joseph Onwuteaka PC*, No. 4:11-CV-3034, 2014 WL 3749652, at *7 (S.D. Tex. July 29, 2014); *see also Gradisher v. Check Enforcement Unit, Inc.*, No. 1:00-CV-401, 2003 WL 187416 at *6 (W.D. Mich. Jan. 22, 2003) ("[D]efense counsel cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (internal quotations omitted).

Finally, Defendants' argument fails as a logical matter. A 50% reduction unfairly penalizes Plaintiffs' counsel by cutting in half all of the hours *they legitimately spent on the winning claims too, e.g., the jury verdict and the appeals.* At best, Defendants should be arguing that the Court should exclude those hours related solely to the unsuccessful claims. They are not making that argument, because there really are no such hours, or at least not many at all. But there is no rule or principle that justifies cutting Plaintiffs' fees just because they vigorously pursued all possible Defendants and all possible sources of recovery. If the law were as Defendants claim, Plaintiffs' counsel would be incentivized to aim very low on as few claims as possible against the bare minimum Defendants to avoid being accused of not having fully succeeded. That is not, and should not be the law.[8] To the contrary, the law is very clear that where, as here, Plaintiffs' counsel

---

[8] If arguments that do not contribute to a plaintiff's ultimate success were not eligible for compensation for that reason alone, then attorneys might be discouraged from raising novel but

achieved an outstanding result for their client, and fully vindicated their injuries, their

attorneys are entitled to the full lodestar. *Hensley*, 461 U.S. at 435 ("the district court

should focus on the significance of the overall relief obtained in relation to the hours

reasonably expended on the litigation").

## III.   Counsel's Entries are Neither Vague Nor Excessive

In the alternative, Defendant Johnson argues that Plaintiff's entries are both vague

and excessive and should be reduced accordingly. Neither argument has merit.

### A. Counsel's Time Entries are Not Vague

With respect to Defendant Johnson's claim that counsel's work descriptions are

vague, this is largely just a repurposing of Defendant's claim that counsel should not be

compensated for time spent on anything other than "whether Deputy Johnson

misrepresented Campbell's interview." Doc. 351 at 9. For example, on 11/9/12, counsel

billed .25 hours for "reviewing disclosure statement filed by Rogers and Johnson,

reviewing FRCP 7.1" Doc. 351-1 at 12. According to Defendant Johnson, this entry is

"[v]ague" because it "[c]ould apply to dismissed Defendant Sheriff Rogers, not just

Deputy Johnson and the only successful claim." Doc. 351 at 9. Similarly, Defendant

Johnson challenged as "vague" entries for drafting, editing and reviewing written

discovery—*e.g.*, "writing interrogatories and document requests to defendants"

(12/20/12) and "[r]eview documents produced by Rogers and Johnson" (2/13/13)—and

---

reasonable arguments in support of their clients' claims and a disincentive for strong advocacy
could result. *See Partington v. Broyhill Furn. Indus.*, 999 F.2d 269, 273-74 (7th Cir.1993) ("A
lawyer who figures out the likeliest outcome in his favor, and aims only for that, is likely to fall
short. The good lawyer aims higher….").

preparing for and taking depositions—*e.g.*, "deposing Rogers" (3/22/12), "taking dep of Stasicha" (5/1/13), "taking dep of McWhorter" (5/1/13), "taking dep of Gladden" (6/21/13) and "taking dep of Neyland" (6/21/13). Doc. 351-1 at 18-19. These descriptions are sufficient to identify the tasks completed; indeed, it is hard to understand how much more specific the entries could have been. *See, e.g.*, *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822-23 (5th Cir. 1997).

Instead, Defendant Johnson appears to be arguing that counsel has not described what portion of each task is attributable to Defendant Johnson. But given the overlap in fact and law among the tasks at hand—and likewise, that each of these tasks was conducted to advance the litigation against Defendant Johnson—engaging in such an endeavor would be impossible. For example, Plaintiffs cannot identify how many hours or minutes in each deposition Plaintiff spent asking questions about Defendant Johnson. That is because each of the depositions—and the written discovery—were all targeted at the investigation that led to Plaintiffs' false arrest and detention.

## B. Counsel's Hours Are Not Excessive

Additionally, Defendant Johnson argues that the hours spent are excessive. In large measure, Defendant Johnson's complaint appears to be with the number of hours spent on the first summary judgment. In response, Plaintiffs have removed 83 hours from Ms. Loevy's timesheets. *See* Ex. 1 [Spreadsheet] (removing contested time entries from Ms. Loevy's spreadsheet for dates spanning 12/3/10 through 1/27/11). Moreover, Defendant Johnson's representation that counsel spent 168 hours responding to Defendant Johnson's summary judgment, including 36 hours to draft 119 words

20

comprising the Statement of Facts, is misleading and again born of Defendant Johnson's

mistaken belief that counsel can only recover for hours spent on the specific claim against

Johnson that was successfully tried. Taking a step back and with the hours above

removed, Plaintiffs' counsel lodged the following entries with respect to drafting the

facts: (a) 1/24/11: review additional documents and draft facts for SJ (10 hours); and (b)

1/25/11: continue drafting facts for SJ response; research legal issues (11 hours). Ex. 1

(Spreadsheet) at 11. At most, then, Plaintiffs' counsel is seeking reimbursement for 21

hours which were used to draft a 12-page statement of facts that contained 19 exhibits.

Doc. 51 (Resp. to Pikett SJ) at 3-15. That statement was drafted and written out in

response to Defendant Pikett's motion for summary judgment and then incorporated by

reference into Plaintiffs' response to Defendant Huff and Duff's summary judgment, and

Defendant Rogers, Johnson and San Jacinto County's summary judgment. Doc. 50 (Resp.

to Huff/Duff SJ) at 3; Doc. 51 (Resp. to Pikett SJ) at 3-15; Doc. 52 (Resp. to

Johnson/Rogers/SJC SJ) at 3. Twenty-one hours for such a draft is hardly excessive.

Additionally, Plaintiff is seeking a total of 88 hours to respond to all three summary

judgments, including a 25-page response to Huff and Duff's motion for summary

judgment (Doc. 50), a 41-page response to Pikett's motion for summary judgment (Doc.

51) and a 23-page response to Defendant Johnson and Rogers' motion summary

judgment (Doc. 52). That too is reasonable.

Defendant Johnson does not appear to challenge any other hours as excessive—

and for good reason. The hours spent by Plaintiffs' counsel are highly reasonable given

the fact that this litigation spanned more than a decade and involved five trips to the Fifth

Circuit in addition to a two-week trial.

## IV. Plaintiffs Have Not Charged For Purely Clerical Work

Additionally, Defendant Johnson challenges a number of hours as non-compensable "clerical work," There are two problems with the Defendant's argument. First, the Defendant gets the standard wrong: Clerical work is not excluded simply because it is clerical. Instead, "[c]lerical work . . . should be compensated at a different rate from legal work." *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (and cases cited in n.10). As a result, the hours attorneys spent engaged in "clerical work" should not be excluded, but merely billed at the paralegal rate. *Id*. at 771, 773-74 (billing attorneys at a lower rate for clerical work--$125 for two attorneys and $90 for one attorney—albeit higher rate than the paralegals were billed at--$85).

Second, not all of the work that the Defendant labels as "clerical" is actually clerical. With respect to attorney time, Defendant Johnson objects to time entries for filing briefs and motions as "clerical." In doing so, however, Defendant Johnson fails to read the entries in context. For each such entry in which a legal document is ultimately filed, the entry discusses drafting, revising, editing or finalizing a particular motion or brief. Ex. 1 at 13, 14, 18, 31, 45, 52, 57, 60, 62-67. Those are inherently legal tasks. As such, there are only two clerical entries on attorney timesheets: (1) a 1/6/2020 entry for .25 hours (regarding conferring about the hotel for trial) and (2) a 7/15/2013 entry for .5 hours (for preparing files to be handed over during maternity leave). Ex. 1 at 45, 61.

Plaintiffs agree that these two entries will be billed at the paralegal rate of $125 per hour. *See Walker*, 99 F.3d at 770.

As for paralegal time, while it is true in this Circuit that Plaintiffs cannot recover attorney's fees for paralegal clerical work (as opposed to attorneys engaged in clerical work), Defendant Johnson improperly identifies work as clerical when it is not. In particular, the following categories are not clerical:

- *Reviewing and redacting exhibits*: Reviewing and redacting exhibits to exclude confidential information or information barred by a motion *in limine* is not clerical work. *See Carbin v. N. ADR Group, LLC*, No. 12-CV-1108JTC, 2013 WL 4779231, at *3 (W.D.N.Y. Sept. 5, 2013) ("Clerical tasks such as organizing case files and preparing documents for mailing are not compensable, while paralegal tasks such as the selection and redaction of trial exhibits and preparation of trial exhibits and witness binders are compensable."); *see also Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 203 (N.D.N.Y. 2019) (same); *Rozell v. Ross-Holst*, 567 F. Supp. 2d 527, 540-41 (S.D.N.Y. 2008). To the contrary, it is work "traditionally done by an attorney." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).

- *Assisting with the preparation of witness exams*: There are a number of time entries along this score. Defendant Johnson myopically focuses on the word "printing," claiming that printing by paralegals is not compensable as "clerical work." But read in context, the documents identified in these entries were printed so that the legal tasks could be completed. For example, for witness

exams, the exams were printed so that paralegals could find deposition pages for impeachment or to refresh a witness' recollection, and identify the relevant exhibits. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (explaining that paralegals can do legal tasks, including "assistance with depositions"). Similarly, for demonstrative exhibits, the exhibits were "printed out and edited;" in other words, the exhibits were printed out so that the paralegals could edit and revise them.

- *Filing briefs*: As was true for attorneys filing motions and briefs, the Defendant argues that any entry with the word "filed" should automatically be eliminated or reduced because filing is non-compensable "clerical work." If any entry by a paralegal simply said "filed brief," that argument might have merit. But just as was true for attorneys' entries for filing, the paralegal entries in which a document was filed has substantially more teeth to it—editing, proofreading, creating tables of contents and finalizing briefs. As such, the work is legal in nature and at most, five percent should be deducted for filing. *See Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Svcs., Inc.*, No. 3:16-CV-03198, 2019 WL 3387751, at *1 (N.D. Tex. July 29, 2019) (finding "drafting and editing" compensable as attorneys' fees); *Diaz v. Doneraki Rest. Inc.*, No. H-12-2238, 2014 WL 2332822, at *2 (S.D. Tex. May 29, 2014) (same).

- *Witness Transport*: Finally, there is an entry for transport of a witness that Defendant Johnson complains is excessive. But that entry includes not only transport, but also preparation of the witness for his testimony. As such, it is

24

neither excessive nor clerical. *See Jenkins by Agyei*, 491 U.S. at 288 n.10
(explaining that paralegals "are capable of carrying out many tasks . . . that
might otherwise be performed by a lawyer and billed at a higher rate"
including "locating and interviewing witnesses").

Plaintiffs, however, are eliminating 19.5 hours of purely clerical paralegal work.
Ex. 1 at 58-61, 63-66.

## V.    Plaintiffs Have Exercised Billing Judgment

Defendant Johnson is also seeking to reduce Plaintiffs' hours because he alleges
that Plaintiffs have not demonstrated that they exercised billing judgment in submitting
their fees. Much of this argument, like those above, relates to Defendant Johnson's claim
that only hours expressly spent on whether Defendant Johnson's misrepresented his
interview with Campbell are compensable. For all of the reasons stated above, that
argument fails. *See* Section III *supra*.

Regardless, Plaintiffs' counsel has exercised billing judgment. Billing judgment
ensures that attorneys are billing only for the hours reasonably necessary to litigate a
particular case. *See*, *e.g.*, *Adhikairi v. Daoud & Partners*, No. 4:09-CV-1237, 2017 WL
5904782, at *11 (S.D. Tex. Nov. 30, 2017). It can be demonstrated in any number of
ways, including through billing records, detailed invoices or descriptions, or affidavits,
all of which enable the Court to identify noncompensable hours. *Gagnan v. United
Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010); *see also Kiggundu v. Bank of
New York Mellon*, No. H-18-1455, 2019 WL 11658788, at *2-3 (S.D. Tex. July 24, 2019)
(finding "detailed accounting of the hours billed, as well as a description of the services

rendered for those hours" sufficient to demonstrate billing judgment). Here, Plaintiffs have demonstrated billing judgment in three ways.

First, Plaintiffs have already reduced the hours requested in response to the Defendant's claim that the hours expended on the first summary judgment were excessive. In particular, Plaintiffs have eliminated 83 hours of time that Debra Loevy spent on the first summary judgment; entries dated: 12/3/10, 12/6/10, 12/7/10, 12/8/10, 12/9/10, 12/13/10, 12/21/10, 1/9/11, 1/10/11, 1/11/11, 1/12/11, 1/13/11, 1/16/11, 1/17/11, 1/18/11, 1/19/11 and 1/20/11. Ex. 1 at 7-8. Plaintiffs have also eliminated 19.5 clerical hours requested by paralegals and reduced the hourly rate for attorney-clerical work time. *See* Sections III, IV *supra*.

Second, and as described in counsel's affidavits, Plaintiffs have eliminated all hours that are attributable to the settlements with Pikett and Fort Bend County. That includes hours spent negotiating, drafting and finalizing the settlement agreements on behalf of each Plaintiff. (Negotiations and settlement occurred in 2013 for Plaintiff Richard Winfrey, Jr. and 2017 for Megan Winfrey. Docs. 218-4, 218-5 (Settlement Agreements). Counsel inadvertently forgot to eliminate two entries, and is therefore removing a 9/12/13 entry for .5 hours and a 12/20/17 entry for .75 hours.[9]

---

[9] Defendant Johnson argues that time entries related to settlement on 10/5/12, 10/17/12, 11/5/12 and 11/6/12 are excludable because the settlement that Plaintiffs reached was with Pikett, but the work that was done in October and November 2012—and the attendant settlement demand that was sent—was a demand as to all of the Defendants. Indeed, Plaintiffs did not reach a settlement with Pikett until nearly a year later, in September 2013.

Third, and as stated in Plaintiffs' opening brief, there are a number of attorneys who worked on Plaintiffs' case and whose hours Plaintiffs are not seeking reimbursement for. Notably, those attorneys include:

- *Jon Loevy*: Jon Loevy is an attorney of record in this litigation. Mr. Loevy was involved at numerous stages of this case, including: reviewing and editing appellate briefs; providing strategic advice and counsel during written and oral discovery; reviewing pretrial motions and witness exams; discussing trial strategy; and working on this reply brief, for example. Jon Loevy's name is mentioned on each of Ms. Loevy's, Ms. Horn's and Ms. Wang's timesheets. However, in the interests of billing judgment, Plaintiffs did not seek compensation for that time or for any of the dozens of hours that Mr. Loevy spent litigating this case.

- *Arthur Loevy*: Arthur Loevy is an attorney at Loevy & Loevy who also provided counsel throughout all stages of this litigation, including regarding mediation, settlement and appeal. Arthur Loevy's name appears in counsel's submitted timesheets but Plaintiffs are not seeking compensation for that time or for any other time that Mr. Loevy spent on the case.

- *Rachel Steinbeck*: Ms. Steinbeck was an attorney of record in this litigation. She participated in the early stages of the case, including traveling to Texas and appearing before Judge Hughes for a court hearing, and assisting with early discovery efforts. Ms. Steinbeck's name appears in counsel's timesheets

27

but counsel is not seeking compensation for that time or any other hours Ms. Steinbeck reasonably spent litigating this case.

Taken together, those three steps—and the concomitant reduction in hours requested—demonstrated Plaintiffs' billing judgment. *See Adhikari*, 2017 WL 5904782, at *11 (finding that billing judgment was demonstrated where time of one attorney reduced and others not counted altogether).

## VI.   Plaintiffs Have Asked for Reasonable Costs

Finally, Defendants have challenged a number of the costs that Plaintiffs seek as excessive. To start, Plaintiffs have removed the costs of the private investigator that they used to locate and interview witnesses in this case. Although "[f]actual investigation, including locating and interviewing witnesses" is "legal work" that would be compensable if performed by a lawyer, caselaw in this Circuit has nonetheless excluded investigator fees. *Jenkins by Agyei*, 491 U.S. at 288 n.10. While reimbursement should not depend on whether the person conducting that investigation is titled "paralegal" or "investigator," Plaintiffs nonetheless recognize the governing law.

The remainder of the Defendant's arguments are addressed below:

### A.  Private Process Server

Defendant Johnson identifies some—but not all—of the controlling law. Courts in this Circuit "have found that private process server costs in lieu of marshal fees may be taxed, but only to the extent that they do not exceed the costs that would have been incurred had the marshal effected service." *Ninan v. Hosp. Partners of Am., Inc.*, CV-H-07-2095, 2009 WL 10692726, at *2 (S.D. Tex. March 13, 2009); *see also Denner v. Tex.*

28

*Dep't of Crim. Justice*, No. SA-05-CV-184-XR, 2007 WL 294191, at *6 (W.D. Tex. Jan. 29, 2007). In the Southern District of Texas, the U.S. Marshal charges $65 per witness. Plaintiffs are reducing the charges on Exhibit 3 accordingly.

### B. Depositions

The Defendant challenges generally costs for deposition transcripts and specifically challenges the cost of getting an expedited transcript for the Defendant's psychological expert, Dr. George Glass. A court can tax the cost of a deposition if "all or any part [of the deposition] was 'necessarily obtained for use in the case.'" *Carpa, Inc. v. Ward Foods*, 567 F.2d 1316, 1323 (5th Cir. 1978); *Windjammer, Inc. v. Kansas City Fire & Marine Ins. Co.*, No. 85-4752, 1989 WL 1801, at *2 (E.D. La. Jan. 9, 1989); *see also Feld Motor Sports, Inc. V. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *19 (E.D. Tex. May 12, 2016) (can recover costs for deposition transcript "if the deposition appeared reasonably necessary at the time it was taken" even if deposition not used at trial or in connection with dispositive motion).

The majority of depositions for which Plaintiffs are seeking costs involve witnesses, or even the Defendant, who testified at trial: Johnson, Huff, Duff, Pikett, Rogers, Plaintiff Richard Winfrey, Jr., Plaintiff Megan Winfrey, Dr. Rycke Marshall and Dr. George Glass. The depositions of each of these individuals was used to prepare trial exams, refresh recollection and/or impeach the witness at trial. Doc. 287 (Huff Trial Test.) at 31; Doc. 334 (Rogers Trial Test.) at 170, 230-231. Moreover, a number of these depositions were used by both parties in dispositive motions and pretrial motions. Doc. 139, 141 (Resp. to SJ) (citing to depositions of Johnson, Rogers, Pikett, Huff and Duff);

Docs. 190, 227 (Mot. Bar Glass) (citing to depositions of Drs. Glass and Marshall).

"[T]he actual use of a deposition in the case or at pretrial proceedings satisfies the

statutory requirement that it be necessary." *Quanta Svcs., Inc. v. Am. Admin. Group, Inc.*,

No. 06-1827, 2008 WL 11394368, at *9 (S.D. Tex. March 20, 2008).

As to the remainder, they fall into three categories: (1) depositions necessary to

file pretrial motions; (2) depositions of potential witnesses who were listed on the parties'

witness lists; and (3) depositions necessary to prove Plaintiffs' case. First, Plaintiff filed a

number of pretrial motions, including a motion to bar Defendant's police practices expert,

Mark Young. Doc. 41, No. 14-448 (Mot. Bar); Doc. 189 (Amended Mot. Bar). Taking a

step back, Defendant Johnson disclosed Mark Young as an expert; he was deposed on

March 27, 2014; and Plaintiffs. filed a motion to bar his testimony on June 13, 2014.

Doc. 41, No. 14-448 (Mot. Bar).

Defendant Johnson identified Young as a trial witness and shortly before trial,

indicated that Young was not available to testify at the trial and that he wanted to record

Young's testimony by video deposition. Doc. 184. On December 30, 2019, Young's trial

testimony was taken by video deposition and Plaintiffs thereafter filed an Amended

Motion to Bar, which was granted. Doc. 189 (Amended Mot. Bar); Doc. 232 (Order at 6).

Given the foregoing, there is no legitimate dispute that the two transcripts of depositions

were "necessary." *See Quanta Svcs., Inc.*, 2008 WL 11394368 at *9.

Second, the remainder of the deposition transcripts are for witnesses who were

listed on Defendant's trial witness list (Gladden, Campbell and Neyland). That makes the

cost of their deposition transcripts reasonably necessary and reimbursable. *See Feld*

*Motor Sports*, 2016 WL 2758183, at *19 (explaining that if defendant "asserted in its pretrial order that these individuals may be mentioned during trial, it would be reasonably necessary that [plaintiff] would want to depose [them]").

Third, Defendant Johnson contests costs of the deposition of Tracy Brown. Because Brown is intertwined with the claim against Johnson and advanced proof of Plaintiffs' case, so too was it necessary to take her deposition and secure a copy of the transcript. Indeed, "costs should not be disallowed merely because the deposition was not ultimately used at trial or in connection with a dispositive motion." *Feld Motor Sports*, 2016 WL 2758183, at *19. Instead, "[s]uch costs are taxable if the deposition appeared reasonably necessary at the time it was taken." *Id*. That is the case here: Plaintiffs were trying to prove Defendant Johnson's knowledge of alternative perpetrators—and by extension, Plaintiffs' innocence—to show his *mens rea* in making a material misstatement and omissions in the arrest-warrant affidavits. *See Buchanek,* 2010 WL 1268069, at *8-10.

Finally, Johnson challenges the necessity of getting an expedited copy of the deposition transcript of Dr. Glass. The shortened timeframe between his deposition and the start of trial, however, made ordering a rush copy necessary.

 To that end, on December 6, 2019, Defendant Johnson disclosed Dr. Glass as an expert. Dr. Glass was then deposed on January 16, 2020.[10] Plaintiffs motions *in limine*

---

[10] Plaintiffs began trying to schedule Dr. Glass' deposition in early December. Due to the holidays and other scheduling conflicts (and through no fault of any party or counsel), the earliest that Dr. Glass could be deposed was January 6, 2020.

31

were due less than a week later, on January 22, 2020 and trial began on February 3, 2020. Among other motions, Plaintiffs filed a motion to bar Dr. Glass from testifying. Doc. 190 (Mot. Bar). Because Dr. Glass' deposition transcript supported Plaintiffs' motion, Plaintiffs ordered an expedited copy and moved to supplement their motion once they had it. Doc. 227 (Mot. Supplement). Plaintiffs' motion was granted in part and Dr. Glass's testimony at trial was limited. Doc. 280 (Order) at 1. Given that timing, it was necessary for Plaintiffs to order an expedited copy of Dr. Glass' deposition transcript.

### C. Travel/Hotel Expenses

Defendant Johnson also complains about travel and hotel costs. As to travel, Defendant Johnson specifically challenges a single United Airlines flight that was charged on February 14, 2020. On February 14, 2020, the jury reported that it had not yet reached a verdict and that it would need to reconvene on Tuesday, February 18. As a result, Plaintiffs' counsel had to buy a last-minute ticket back to Houston for jury deliberations. Undersigned counsel's ticket was $1,188.80. *See* Exhibit 7.

Additionally, the Defendant contends that they did not receive any invoices from the Cambria Hotel. Notably, on information and belief, this is the same hotel that representatives from the Defendant's insurance company stayed at during the trial. Moreover, the hotel costs were reasonable.

To that end, the trial in this matter started on February 3, 2020 and a verdict was not reached until February 18, 2020. Plaintiffs had two attorneys and one paralegal who worked on this trial (the same, notably, as the Defendant). The total cost of the hotel for trial was $8585.96; divided by three (three persons each with their own room) and by the

32

16 days that trial spanned, that amounts to $178.87/night per person. *See* Exhibit 4. That is well within the realm of "reasonable."

### D.  No Across-the-Board Reduction is Warranted

Finally, in challenging Plaintiffs' costs, the Defendant repeats his claim that the costs should be reduced by 8/9 because Plaintiffs succeeded against only one out of nine Defendants.[11] The Defendant cites no support for such a radical reduction in costs nor could they. That is because caselaw cuts in other direction. *See*, *e.g.*, *Illinois Cent. R. Co. v. Harried*, No. 5:06-CV-160, 2011 WL 283925, at *2 (S.D. Miss. Jan. 25, 2011) ("[T]he fact that Guy and Brock were not initially parties to the litigation does not relieve them of the obligation to pay costs related to the early part of the litigation because the claims against them share a common core of facts with those initially brought against Harried and Turner."). Moreover, to the extent that the Defendant is arguing that Plaintiffs' costs should be reduced because of their limited success, that also fails because Plaintiffs' success, as described more fully in Section I above, is hardly "limited." Indeed, the Defendant cannot self-help himself to an 8/9 reduction in costs simply because he wants one.

### VII.   Requested Fees and Costs

Given the foregoing, Plaintiff is requesting $843,825 in fees and $53,804.44 in costs as set forth in Exhibits 2 and 5.

---

[11] Defendant now suggests that Plaintiffs proceeded against nine—instead of 13—Defendants.

Respectfully submitted,

/s/ Gayle Horn
*Attorney for Plaintiffs*

Elizabeth Wang                          Gayle Horn
LOEVY & LOEVY                           LOEVY & LOEVY
2060 Broadway, Ste. 460                 311 N. Aberdeen St.
Boulder, CO 80302                       Chicago, IL 60607
O: 720.328.5642                         O: 312.243.5900
elizabethw@loevy.com                    gayle@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

I, Gayle Horn, an attorney, hereby certify that I filed the foregoing via CM/ECF, on May 2, 2022, thereby causing an electronic copy to be delivered to all counsel of record.

Respectfully submitted,

/s/ Gayle Horn
*Attorney for Plaintiffs*