United States District Court
Southern District of Texas
**ENTERED**
January 09, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICHARD WINFREY, JR. and § | |
| MEGAN WINFREY, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:10-CV-1896 |
| § | |
| LENARD JOHNSON, § | |
| § | |
| Defendant. § | |

# MEMORANDUM OPINION AND ORDER
## ON ATTORNEY'S FEES AND COSTS

Pending before the Court is Plaintiffs' Amended Motion for Attorneys' Fees and Defendant's Response in Opposition. (Dkts. 350, 351). Having considered the parties' filings, the responses and replies thereto, and the applicable law, the Court finds Plaintiffs' Amended Motion for Attorneys' Fees, as modified by Plaintiffs' Reply in Support of Their Amended Motion for Attorneys' Fees and Costs (Dkt. 358), should be **GRANTED IN PART AND DENIED IN PART.** Accordingly, the Court awards **$841,731.25 in fees and $53,804.44 in court costs** to Plaintiffs.

## BACKGROUND

This litigation commenced in 2010, when Richard Winfrey, Jr. filed eight causes of action against nine defendants, all related to his wrongfully being charged with (but not convicted of) capital murder in 2007. (Dkt. 1). His sister Megan Winfrey, who was initially convicted of the same murder but whose conviction was

1

overturned on appeal in 2013, filed seven causes of action against five defendants in 2014. (4:14-cv-448, Dkt. 1). Over the years, some of the charges against some of the defendants were dismissed; other defendants settled. Both cases were appealed and remanded to the district court. The two matters were consolidated in 2019.

The case went to trial in February 2020 on a single issue: whether the arresting officer, Deputy Lenard Johnson, knowingly and intentionally, or with reckless disregard for the truth, misstated or omitted information in seeking an arrest warrant for each Plaintiff. (Dkt. 160, 161, 266). The jury, finding that Johnson omitted information from his arrest warrant affidavits, awarded Richard $750,000 in damages and Megan $250,000 in damages. (Dkt. 303). Johnson appealed; the Fifth Circuit affirmed the jury verdict. (Dkt. 307, *Winfrey v. Johnson*, No. 20-20477, 2021 WL 5286570 (5th Cir. Nov. 12, 2021)). After the mandate was issued, Plaintiffs filed a motion for attorneys' fees and costs. (Dkt. 350).

## ANALYSIS

Fee awards for prevailing civil-rights plaintiffs in lawsuits brought under 42 U.S.C. § 1983 are governed by 42 U.S.C. § 1988. *McNamara v. Moody*, 606 F.2d 621, 626 (5th Cir. 1979). The statute provides that "[i]n any action or proceeding to enforce a provision of section [1983] . . . the court, in its discretion, may allow the prevailing party [] a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978).

One is a "prevailing party" for attorneys' fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A plaintiff prevails "when actual relief on the merits of [plaintiffs'] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012).

Fee applications in the Fifth Circuit are analyzed using the "lodestar" method. *Strong v. Bellsouth Telecomm., Inc.,* 137 F.3d 844, 850 (5th Cir. 1998). The first lodestar step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case. In setting a reasonable billing rate, courts consider that particular attorney's regular rates, as well as the rate "prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). The second step is to determine the number of hours "reasonably expended" on the litigation. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). The party seeking the fee award has the burden of establishing the reasonableness of the number of hours billed. One relevant consideration is whether the attorney hours show an exercise of "billing judgment." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). To establish such billing judgment, a fee applicant must produce

3

"documentation of the hours charged and the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. The court then calculates the appropriate "lodestar", *i.e.*, the reasonable hourly billing rate for the attorney multiplied by the number of hours he or she reasonably expended on the litigation. *Id.*

After calculating the lodestar, the court must consider whether to adjust the fee upward or downward. *Riddle v. Tex-Fin, Inc., No*. CIV.A. H-08-3121, 2011 WL 1103033, at *5 (S.D. Tex. Mar. 22, 2011). The most important factor to consider is the result obtained. *Villegas v. Regions Bank*, No. CIV.A. H-11-904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013). If the success is limited, the lodestar should be reduced to reflect that. However, the lodestar is "presumptively reasonable and should only be modified in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Although the lodestar method effectively replaced the balancing test set out in *Johnson v. Georgia Highway Express, Inc*. those factors may still be considered. 488 F.2d 714, 717-19 (5th Cir. 1974). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent;

4

(7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

The Supreme Court has held that the "costs" referenced in § 1988 "is to be read in harmony with the word 'costs' in 28 U.S.C. § 1920." *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991). The following costs are taxable under § 1920: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) certain compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services. *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007)

### A. Plaintiffs' Reasonable Attorneys' Fees

Having obtained a $1,000,000 compensatory damages award against Johnson—$750,000 for Richard and $250,000 for Megan—there is no question that Plaintiffs were the prevailing party in this litigation. (Dkt. 303). Johnson does not

contest this fact. Plaintiffs are thus entitled to "reasonable" attorneys' fees at the Court's discretion. 42 U.S.C. § 1988(b).

Plaintiffs calculate their requested fees using the "lodestar" method, and they do not seek an increase of the lodestar amount under the *Johnson* factors. (Dkt. 350 at 15). After revising their request in light of Johnson's response and objections (Dkt. 351), Plaintiffs seek $843,825 in fees based upon the following information from the billing records attached to their motion and reply: (1) lead attorney for Plaintiffs, Elizabeth Wang, spent 1176 hours on this matter at a rate of $400 an hour (and logged half an hour of clerical work at a rate of $125 an hour); (2) attorney Gayle Horn spent 654 hours on this matter at a rate of $400 an hour (and logged a quarter of an hour of clerical work at a rate of $125 an hour); (3) attorney Debra Loevy spent 193.5 hours on this matter at a rate of $450 an hour; and (4) paralegals Andrew Garden, Lauren Lebata, and Brian Swift spent a combined 188.25 hours on this matter at a rate of $125 an hour. (Dkt. 358-2). The Court finds Plaintiffs' fee request to be reasonable for the reasons stated below.

### 1. Reasonable Hourly Rates

As an initial matter, the Court finds that the hourly rates for attorneys Wang, Horn, and Loevy are reasonable. *See Jane Roe/Rachel V. Rose v. BCE Technology Corp.* 2014 WL 1322979, at *3 (S.D. Tex. 2014) ("Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering

the experience of the lawyer, the reputation of the firm, and the complexity of the case."). Plaintiffs provided ample documentation of each attorney's experience and expertise; the Court finds that the requested rates are reasonable in light of each attorney's credentials and the prevailing market rates. (Dkt. 350-2, 350-3, 350-4).

The Court also agrees that the proposed rate of $125 per hour for paralegal work is reasonable. *See Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 709 (S.D. Tex. 2012) ($125 per hour for paralegal work); *Firth v. Don McGill of West Houston, Ltd.*, No. Civ.A. H–04–0659, 2006 WL 846377, at *6 (S.D. Tex. March 28, 2006) ($95 to $125 per hour for paralegal work). In his response to Plaintiffs' motion for attorneys' fees, Johnson raised no objections to these hourly rates. (Dkt. 351).

## 2. Number of Hours Reasonably Expended

The Court finds that the revised totals of hours expended, as reflected in Plaintiffs' reply in support of their amended motion for attorneys' fees and costs (Dkt. 358), are reasonable and recoverable. The Court further finds that Plaintiffs met their burden of properly documenting the hours spent and submitting competent evidence of those hours. *Hensley*, 461 U.S. at 433; *Prater v. Commerce Equities Mgmt. Co.*, Civil Action No. H–07–2349, 2008 WL 5140045, at *3 (S.D. Tex. Dec. 8, 2008).

Johnson objected to Plaintiffs' initial motion for attorneys' fees and costs on several grounds. (Dkt. 351). Plaintiffs amended their fees and costs requests in

response to some of those objections. (*see infra,* Dkt. 358-1, 358-3, 358-4). The Court will address Johnson's remaining objections below.

### a. Johnson's First Objection: Hours expended on dismissed claims and dismissed defendants are not compensable

Johnson argues that Plaintiffs are not entitled to fees for work related to Plaintiffs' claims against Fort Bend County, Deputy Pikett, Ranger Duff, Ranger Huff, alternative suspects, Sheriff Rogers, and San Jacinto County because the "claims against Deputy Johnson [are] not factually interwoven with claims against other defendants." (Dkt 351 at 13-19). Plaintiffs argue that they are entitled to fees related to dismissed claims because those claims "contained a common factual core and arose out of related, if not identical legal theories." (Dkt. 358 at 7). The Court agrees with Plaintiffs.

As the Fifth Circuit noted in *Coleman v. Houston Indep. Sch. Dist.*, "there is ample authority for the proposition that a partially prevailing party may recover all reasonably incurred attorney fees, even though the party did not prevail on all claims, as to all defendants, or as to all issues in a matter." No. 98-20692, 1999 WL 1131554 at *5 (5th Cir. Nov. 8, 1999). "When the successful and unsuccessful claims involve a 'common core of facts' or are based upon 'related legal theories,' then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiffs' ultimate success." *Id.,* quoting *Hensley*, 103 S.Ct. at 1940. The Court finds that the claims against the dismissed defendants (1)

8

involved a "common core of facts" with the claims against Johnson, (2) were based upon "related legal theories," and therefore (3) "contributed to [Plaintiffs'] overall success." *Id.*

Richard and Megan shared a single purpose in pursuing this litigation: to obtain compensation for the violations of their constitutional rights that resulted in their wrongful arrests, prosecution, and (for Megan) wrongful conviction of murder. The litigation focused on only one police investigation, an investigation in which every individual defendant was involved at one time or another: Texas Rangers Ronald Duff and Grover Huff assisted with the dog scent line-up (Dkt, 287, 339) that was conducted by Fort Bend County Deputy Keith Pikett (Dkt. 331).[1] Former San Jacinto County Sheriff Lacy Rogers was also present during the scent line-up and executed the warrants against Plaintiffs. (Dkt. 334). All of the individual defendants worked with Johnson in some capacity during the investigation, and the pursuit of claims against those defendants thus "contributed to [Plaintiffs'] overall success" in their claims against Johnson. *Coleman*, 1999 WL 1131554 at *5.

### b. Johnson's Second Objection: Vague billing descriptions and excessive hours claimed

---

[1] Deputy Pikett worked under Fort Bend County Sheriff Milton Wright, who was sued in his official capacity and whose claims were not reinstated on appeal from Richard and Megan's first summary judgment order. (Dkt 1, *Winfrey v. San Jacinto County*, 481 Fed. App'x 969, 981-82 (5th Cir. 2012)). The Court thus finds that the work done in pursuit of the claims against Sheriff Wright are not severable from the work done in pursuit of Deputy Sheriff Pikett's claims.

9

Johnson argues that "[v]ague description of legal work that either applies to pursuing claims against dismissed defendants or are excessive should be reduced." (Dkt. 351 at 17). Plaintiffs argue Johnson's "vagueness" objection merely reasserts Johnson's objection to awarding fees for work on dismissed claims. (Dkt. 358 at 22) And while Plaintiffs agreed to remove 83 hours from their original request, they maintained that their remaining request was not excessive. (Dkt. 358 at 23-25).

The Court finds that Johnson's objections to the "vagueness" of Plaintiffs' time entries merely restate Johnson's earlier argument that Plaintiffs should not recover fees for work related to dismissed defendants. Because the Court finds that the claims against the dismissed defendants contributed to the success of the claims against Johnson, *see supra*, the Court finds that time entries reflecting work in pursuit of those claims are not impermissibly vague.

As to Johnson's argument that Plaintiffs' hours appeared excessive in relation to the tasks completed, the Court notes that Plaintiffs removed a significant number of Lovey's hours from their request (for time spent on Plaintiffs' first summary judgment). (Dkt. 358-1). The Court also finds persuasive Plaintiffs' explanation of the remaining disputed time entries. (Dkt. 358 at 24).

### c. Johnson's Third Objection: Nonlegal work is not compensable

Johnson argues that "Plaintiffs' clerical time or combined block billing of legal and clerical work must be reduced," for a total reduction of $9,518.75. (Dkt.

10

351 at 19-20). In response, Plaintiffs argue that (1) Johnson incorrectly defines "clerical" work and (2) some of the work Johnson labeled as "clerical" is not such. (Dkt. 358 at 25). Nevertheless, Plaintiffs eliminated 19.5 hours from their paralegal totals for work that was arguably clerical in nature. (Dkt. 358 at 28).

The Court finds that Plaintiffs' revised paralegal entries do not reflect clerical work, with the exception of four entries involving the redaction of exhibits. In the Fifth Circuit, redacting exhibits is considered clerical work. *See Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779, 787 (S.D. Tex. 2021) ("Preparing, assembling, and redacting documents and exhibits, including affixing labels, are likewise clerical."). Thus, the Court finds that the following entries are non-compensable:

| Date | Hours | Task | Paralegal |
|---|---|---|---|
| 1/7/2020 | 1.0 | Redacting trial exhibits | Brian Swift |
| 1/8/2020 | 1.75 | Redacting trial exhibits | Brian Swift |
| 1/21/2020 | 4.0 | Review and redact exhibits | Andrew Garden |
| 1/23/2020 | 1.0 | Redacting trial exhibits | Lauren Lebata |

Johnson's remaining objections to "clerical" tasks appear to encompass broad terms such as "filing" or "printing," but Johnson fails to note that these entries contextualize the non-compensable tasks with "legal" tasks that are appropriate for fee requests (such as "draft and file notice of appeal," "print out and edit

11

demonstratives," and "finalizing and revising brief and filing"). (Dkt. 351-7). While the Court will remove 7.75 paralegal hours that were dedicated to redacting exhibits (for a total reduction of $968.75), the Court finds the remaining paralegal entries to reflect non-clerical, compensable tasks.

### d. Johnson's Fourth Objection: Limited success on the overall litigation and lack of billing judgment warrants proportionate reduction in claims.

Johnson argues that Plaintiffs have not exercised billing judgment, and thus the requested fee should be reduced an additional 20%. (Dkt. 351 at 20-21). Johnson further argues that, after his requested 20% reduction is applied, Plaintiffs' requested fees should be reduced by another 50% due to Plaintiffs' "limited success on their overall claims." (Dkt. 351 at 22). Plaintiffs argue that no reduction is warranted. (Dkt. 358 at 28-31). The Court agrees with Plaintiffs.

The Court finds that Johnson's efforts to show a lack of billing judgment reflect Johnson's incorrect argument that "only hours expressly spent on whether [] Johnson misrepresented his interview with Campbell are compensable." (Dkt. 351 at 28). The Court also finds the Plaintiffs exercised billing judgment in not seeking fees for work performed by other members of Loevy & Loevy, including Jon Loevy, Arthur Loevy, and Rachel Steinbeck. (Dkt. 358 at 28-31). The Plaintiffs' billing

judgment is further evidenced by their reduction in requested fees and costs in response to certain objections from Johnson to their initial request. (Dkt. 358-2).[2]

Finally, the Court disagrees with Johnson's claim that a 50% reduction is warranted in light of Plaintiffs' "limited success." (Dkt. 351 at 22). The Court finds that what Plaintiffs achieved here—a damages award totaling $1,000,000 after several years of hard-fought litigation—are "excellent results" that justify a "fully compensatory fee." *Hensley*, 461 U.S. at 435.

Thus, with the exception of 7.75 hours spent redacting documents, Plaintiffs have demonstrated that their revised fee request is reasonable and recoverable. After removing those 7.75 hours from Plaintiffs' revised request, the Court finds Plaintiffs are entitled to $841,731.25 in fees.

**B. Costs and Expenses**

Plaintiffs initially requested $61,197.64 in costs and expenses. (Dkt. 350 at 17-18). In response, Johnson argued that (1) costs related to private process servers, expedited copies, deposition transcripts, a particular United flight, hotel fees, flights and hotel fees for depositions and hearings, and private investigators should be eliminated, and (2) all costs should be reduced by 88% to reflect the Plaintiffs being

---

[2] Plaintiffs initially requested $884,675 in attorneys' fees (Dkt. 350 at 18), then removed 114.5 hours in response to Johnson's objections. (Dkt. 358). Plaintiffs calculated their revised fee request to equal $843,825, but that calculation erroneously incorporated the initial request for paralegal Brian Swift (for 27.25 hours) instead of the amended request (for 18.25 hours). (Dkt. 358-2). Thus, Plaintiffs' actual revised request equaled $842,700.

13

"entirely unsuccessful against eight other defendants." (Dkt. 351 at 24-26). In response, Plaintiffs agreed to remove the costs of the private investigator and to reduce the cost of the private process server, but maintained that the other costs were reasonable and recoverable. (Dkt. 358 at 31-36). After revising their request in light of Johnson's objections, Plaintiffs now seek $53,804.44 in costs: $18,044.81 in §1920 costs (Dkt. 358-3), and $20,984.23 in §1988 expenses (Dkt. 358-4). The Court agrees with Plaintiffs that Johnson's argument for an 88% reduction in costs is unsupported by case law and erroneous in light of Plaintiffs' overall success in the litigation. (Dkt. 358 at 36).

The Court disagrees with Johnson's arguments against the disputed costs, which are addressed below. Johnson is not entitled to an across-the-board reduction in costs for the same reason Johnson is not entitled to a reduction to the loadstar—the claims against the dismissed defendants involved a "common core of facts" with the claims against Johnson, and all claims were "based on related legal theories." *Hensley*, 103 S.Ct. at 1940 (1983). Thus, "the presentation of [those] unsuccessful claims . . . contributed to [Plaintiffs'] overall success." *Coleman*, 1999 WL 1131554 at *5. An across-the-board reduction in costs is not warranted here.

Johnson argues that Plaintiffs are not entitled to the costs of a private process server. (Dkt. 351 at 24). But "a prevailing party who used a private process server may recover as costs the amount that would have been charged by the U.S. Marshal's

14

[sic] Service for service of process." *Ibarra v. BP Expl. & Prod. Inc.*, No. CV H-19-2898, 2020 WL 6585691, at *2 (S.D. Tex. Nov. 10, 2020) (citing *Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 973 (S.D. Tex. 2011)). Because $65 represents the cost per hour "for process served or executed personally . . . for each item served by one U.S. Marshals Service employee, agent, or contractor," 28 C.F.R. § 0.114(a)(3), the Court agrees that Plaintiffs are entitled to $65 per hour in private-process-server costs.

Johnson argues that $13,479.11 in transcript costs should be struck because "Plaintiffs have not shown whether the deposition transcripts and certain hearing transcripts were necessarily obtained for use in *this case*." (Dkt. 351 at 25). In response, Plaintiffs argue that (1) most of the depositions for which costs are being sought involve witnesses who testified at Johnson's trial (Dkt. 358 at 32), and (2) the depositions of witnesses who did not testify at trial nevertheless were necessary to file pretrial motions, were potential witnesses, or were necessary to prove Plaintiffs' case (Dkt. 358 at 32-33). Plaintiffs further argue that an expedited copy of the deposition transcript for Dr. George Glass, one of Johnson's expert witnesses, was necessary due to the limited timeframe between Dr. Glass' deposition and Plaintiffs' motions *in limine* deadline (less than one week). (Dkt. 358 at 35). The Court finds that all of Plaintiffs' costs related to deposition transcripts are reasonable.

Johnson argues that "Plaintiffs have not met their burden to prove the reasonableness of the $1,188.80 flight and hotel fees of $8,585.96 for trial." (Dkt 351 at 25). Johnson further objects to flight and hotel expenses to depose parties and attend hearings for other defendants in the case. (Dkt. 351 at 25-26). In response, Plaintiffs demonstrated that the plane ticket in question was particularly expensive because it was purchased on short notice the day the jury reported that they would need to reconvene the following week for deliberations. (Dkt. 358 at 35, 358-7). Furthermore, while Plaintiffs did not attach invoices for every night of their stay in the Cambria Hotel, the Plaintiffs demonstrated that the nightly rate—$178.87 per night per person—was reasonable. (Dkt. 358-4).

The Court finds Plaintiffs' revised request for $18,044.81 in §1920 costs (Dkt. 358-3) and $20,984.23 in §1988 expenses (Dkt. 358-4) to be reasonable and recoverable.

## CONCLUSION

Based on the foregoing reasons, it is hereby **ORDERED** that the Plaintiffs' Amended Motion for Attorneys' Fees and Costs (Dkt. 350), as modified by Plaintiffs' Reply in Support of Their Amended Motion for Attorneys' Fees and Costs (Dkt. 358), is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs are awarded **$841,731.25 in fees and $53,804.44 in costs and expenses**.

| Name | Rate | Billable Hours | Lodestar |
|---|---|---|---|
| Attorneys: | | | |
|   Debra Loevy | $450 | 193.5 | $87,075 |
|   Gayle Horn | $400 | 654 | $261,600 |
|   Gayle Horn (clerical work) | $125 | .25 | $31.25 |
|   Elizabeth Wang | $400 | 1176 | $470,400 |
|   Elizabeth Wang (clerical work) | $125 | .5 | $62.50 |
| | | TOTAL: | $819,168.75 |
| Paralegals: | | | |
|   Andrew Garden | $125 | 111.75 | $13,968.75 |
|   Lauren Lebata | $125 | 53.25 | $6,656.25 |
|   Brian Swift | $125 | 15.5 | $1,937.50 |
| | | TOTAL: | $22,562.50 |
| | | Costs and expenses TOTAL: | $53,804.44 |
| | | | |
| | | **TOTAL:** | **$895,535.69** |

**IT IS SO ORDERED.**

SIGNED at Houston, Texas on January 9, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE